**Case No. 2:25-cv-00429-MHT-SMD**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

---

**REAR ADMIRAL W. KENT DAVIS (RET.).**

***Plaintiff,***

**v.**

**KAY E. IVEY, in her individual capacity and her official capacity as GOVERNOR OF THE STATE OF ALABAMA,**

***Defendant.***

---

# Defendant Kay E. Ivey's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) & 12(b)(6), and Her Memorandum of Law in Support

---

H. William Bloom III
MAYNARD NEXSEN PC
770 Washington Ave., Ste. 421
Montgomery, AL 36104
(334) 262-2001
wbloom@maynardnexsen.com

Jordan A. LaPorta
MAYNARD NEXSEN PC
1901 Sixth Ave. N., Ste. 1700
Birmingham, AL 35203
(205) 254-1000
jlaporta@maynardnexsen.com

*Counsel for Defendant Kay E. Ivey, in her individual capacity and in her official capacity as Governor of the State of Alabama*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ 2
TABLE OF AUTHORITIES ........ 5
INTRODUCTION ........ 12
FACTS ........ 15
STANDARD OF REVIEW ........ 19
ARGUMENT ........ 21

I. Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law (Count I). ........ 21

A. Plaintiff's First Amendment Retaliation Claim Fails on the Merits. ........ 22

1. Plaintiff's Ethics Complaint Was Not Protected Speech. ........ 24

a. Plaintiff did not speak as a citizen on a matter of public concern. ........ 24

b. The *Pickering* Balancing Test favors the Governor's interests. ........ 28

2. Plaintiff's Laundry List of Other Alleged Speech Cannot Support a Retaliation Claim, Either. ........ 31

a. Plaintiff has not adequately pleaded retaliation based on his "other … speech." ........ 32

b. Plaintiff spoke as head of the Department—not as a private citizen. ........ 33

c. The *Pickering* Balancing Test does not prohibit a governor from firing an executive official based on policy disagreements. ........ 33

B. Immunity Precludes Plaintiff from Obtaining Relief for His First Amendment Retaliation Claim. ........ 35

1. The Governor Is Entitled to Sovereign Immunity for Claims Brought Against Her in Her Official Capacity for Money Damages. ........ 35

2. The Governor Is Entitled to Qualified Immunity to the Extent Plaintiff Seeks Monetary Relief Against Her in Her Individual Capacity. ........ 36

II. Plaintiff's Procedural and Substantive Due Process Claim Fails as a Matter of Law (Count II). ........ 41

A. Plaintiff's Procedural Due Process Claim Fails on the Merits. ........ 42

1. The Due Process Clause Does Not Apply Because Plaintiff Lacks a Cognizable Property Interest.......... 42

2. The Governor Satisfied the Constitutional Minimums of Due Process. .......... 43

a. State Statutes Do Not Define the Contours of Plaintiff's Federal Due Process Rights. .......... 44

b. The Governor Supplied Plaintiff with the Constitutional Minimum Due-Process Requirements. .......... 45

c. The Governor Had the Supreme Executive Power to Remove Plaintiff. .......... 47

B. Plaintiff's Substantive Due Process Claim Fails on the Merits. .......... 51

C. The Governor Is Entitled to Sovereign Immunity for Claims Brought Against Her in Her Official Capacity for Money Damages. .......... 52

D. The Governor Is Entitled to Qualified Immunity to the Extent Plaintiff Seeks Monetary Relief Against Her in Her Individual Capacity.......... 52

III. Plaintiff is Not Entitled to Injunctive Relief on Either of His Federal Claims (Counts I and II).......... 55

A. Plaintiff Pleads Himself Out of the Application of the *Ex parte Young* Exception. .......... 55

B. Plaintiff's Alleged Ongoing Harm Has Been Mooted by a Subsequent Change in Law. .......... 57

IV. Plaintiff is Not Entitled to Declaratory Judgment/Injunctive Relief (Count III). .......... 57

A. Plaintiff's Request for Declaratory Relief Does Not Supply Original Jurisdiction for This Court. .......... 57

B. A Declaratory Judgment is an Improper Vehicle for Plaintiff's Reinstatement.......... 58

C. Governors of the State of Alabama Possess the Authority to Terminate the Commissioner. .......... 59

D. Plaintiff May Not Seek Damages Via His Declaratory Judgment Claim. .......... 59

E. Because He Suffers No Ongoing Harm, Plaintiff May Not Receive Injunctive Relief to Reinstate Him as Commissioner.......... 60

V. This Court Should Decline Supplemental Jurisdiction Over the State-Law Claims (Counts IV–VIII). .......... 61

VI. Plaintiff's State-Law Claims Fail as a Matter of Law (Counts IV–VIII). .......... 62

A. Governors of the State of Alabama Possess the Authority to Terminate the Commissioner (Counts IV, V, and VIII). .......... 63

B. Plaintiff's State-Law Claims Are Barred by State Immunity (Counts IV–VIII). .......... 63

C. Plaintiff's State-Law Claims Are Barred by State-Agent Immunity (Counts IV–VIII). .......... 64

D. The Governor Has No Duty to Pay Plaintiff in Her Individual Capacity (Counts IV and V). .......... 65

E. Alabama Code § 36-25-24 Does Not Supply a Cause of Action for "Public Officials" (Count IV). .......... 66

F. Plaintiff Fails to State a Claim for Wrongful Termination (Count V). .......... 67

G. The Governor was Not a Stranger to the Business Relation, Defeating the Intentional Interference Claim (Count VIII). .......... 68

CONCLUSION .......... 69

## TABLE OF AUTHORITIES

**Cases**

*Abdur-Rahman v. Walker*,
567 F.3d 1278, 12882 (11th Cir. 2009) .......... 24, 26, 25, 27

*Alabama v. Pugh*,
438 U.S. 781 (1978) .......... 35

*Alexander v. State*,
150 So. 2d 204 (Ala. 1963) .......... 49

*Alves v. Bd. of Regents of the Univ. Sys. of Ga.*,
804 F.3d 1149, 1159 (11th Cir. 2015) .......... 25, 26

*Ameritox, Ltd. v. Millennium Lab'ys, Inc.*,
803 F.3d 518, 539 (11th Cir. 2015) .......... 62

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .......... 19, 32, 33, 36, 40, 54, 65

*Banks v. Sec'y, Dep't of Health & Hum. Servs.*,
38 F.4th 86, 93 (11th Cir. 2022) .......... 57

*Barnhart v. Ingalls*,
275 So. 3d 1112, 1127 n.9 (Ala. 2018) .......... 66

*Barr v. Matteo*,
360 U.S. 564, 574–75 (1959) .......... 64

*Bell Atl. Corp v. Twombly*,
550 U.S. 544, 563 (2007) .......... 40, 54, 65

*Bennett v. United States*,
102 F.3d 486, 488 n.1 (11th Cir. 1996) .......... 20

*Birmingham v. Graffeo*,
551 So. 2d 357, 364 (Ala. 1989) .......... 41, 43, 51, 53, 54

*Biro v. City of Tallahassee*,
2025 WL 1068229, at *4 (11th Cir. Apr. 9, 2025) .......... 28, 29, 30, 34

*Borden v. Katzman*,
881 F.2d 1035, 1037 (11th Cir. 1989) .......... 57

*Brown v. Dunn*,
2021 WL 4523498, at *2 (M.D. Ala. Oct. 4, 2021) .......... 36

*Busse v. Lee Cnty., Fla.*,
317 F. App'x 968, 974 (11th Cir. 2009) .......... 61

*California v. Texas*,
593 U.S. 659, 673 (2021) .......... 57

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343, 350 n. 7 (1988) ........ 61

*Carruth v. Bentley*,
942 F.3d 1047, 1054 (11th Cir. 2019) ........ 36, 37, 38, 52, 53, 54

*Chambers v. Cherokee Cnty.*,
743 F. App'x 960, 963 (11th Cir. 2018) ........ 26

*Chesser v. Sparks*,
248 F.3d 1117, 1124 (11th Cir. 2001) ........ 29, 32, 34, 39

*Cleveland Board of Education v. Loudermill*,
470 U.S. 532, 538 (1985) ........ 41, 42, 43, 44, 46, 51

*Cobb v. Alabama*,
2011 WL 3666696, at *2 (M.D. Ala. Aug. 22, 2011) ........ 35

*Collins v. Yellen*,
594 U.S. 220, 256 (2021) ........ 50

*Connick v. Myers,*
461 U.S. 138, 146–152 (1983) ........ 21, 29, 32, 33, 38

*Coral Ridge Ministries Media v. Amazon.com, Inc.*,
406 F. Supp. 3d 1258, 1267–68 (M.D. Ala. 2019) ........ 19

*Couch v. Montgomery City Police Dep't*,
2013 WL 6096362, at *5 (M.D. Ala. Nov. 20, 2013) ........ 61

*Cross v. Ala. Dep't of Mental Health & Mental Retardation*,
49 F.3d 1490, 1502 (11th Cir. 1995) ........ 55

*Echols v. Lawton*,
913 F.3d 1313, 1324 (11th Cir. 2019) ........ 39, 54

*Ex parte Butts*,
775 So. 2d 173, 177–78 (Ala. 2000) ........ 64, 65

*Ex parte Cooper*,
390 So. 3d 1030, 1036–37 (Ala. 2023) ........ 63

*Ex parte Cranman*,
792 So. 2d 392, 405 (Ala. 2000) ........ 64, 65

*Ex parte Gilland*,
274 So. 3d 976, 985 n.3 (Ala. 2018) ........ 40, 65

*Ex parte McGuire*,
2025 WL 1776553, at *6 (Ala. June 27, 2025) ........ 64

*Ex parte Moulton*,
116 So. 3d 1119, 1141 (Ala. 2013) ........ 36, 60, 63

*Ex parte Pinkard*,
373 So. 3d 192, 201 (Ala. 2022) ........ 66

*Ex parte Roberts*,
2025 WL 1776254 ........ 63

*Ex parte Wilcox Cnty. Bd. of Educ.*,
279 So. 3d 1135, 1146 (Ala. 2018) ........ 65

*Ex parte Young*,
209 U.S. 123 (1908) ........ 55

*Foulke v. Weller*,
2024 WL 2761778, at *5 ........ 36, 54

*Garcetti v. Ceballos*,
547 U.S. 410, 417 (2006) ........ 21, 24, 25, 27, 28, 30, 67

*Gov't Emps. Ins. Co. v. Glassco Inc.*,
85 F.4th 1136, 1147 (11th Cir. 2023) ........ 48

*Green v. Graham*,
476 F. Supp. 3d 1182, 1194 (M.D. Ala. 2020) ........ 59

*Grizzle v. Kemp*,
634 F.3d 1314, 1319 (11th Cir. 2011) ........ 56

*Hammonds v. Montgomery Children's Specialty Ctr.*,
2022 WL 949830, at *1 (M.D. Ala. Mar. 29, 2022) ........ 19

*Harbert Intern., Inc. v. James*,
157 F.3d 1271, 1282 (11th Cir. 1998) ........ 37

*Hardric v. City of Stevenson*,
843 So. 2d 206, 210 (Ala. Civ. App. 2002) ........ 67

*Hardy v. Birmingham Bd. of Educ.*,
954 F.2d 1546, 1553 (11th Cir. 1992) ........ 61

*Harris v. Birmingham Bd. of Educ.*,
817 F.2d 1525, 1527–28 (11th Cir. 1987) ........ 42, 44, 45, 46, 53, 54

*Hartwell v. City of Montgomery, AL*,
487 F. Supp. 2d 1313, 1321 (M.D. Ala. 2007) ........ 34, 39, 55

*Heck v. Hall,*
190 So. 280 (Ala. 1939) ........ 43

*Hoefling v. City of Miami*,
811 F.3d 1271, 1282 (11th Cir. 2016) ........ 51

*Holloman ex rel. Holloman v. Harland*,
370 F.3d 1252, 1264 (11th Cir. 2004) ........ 37, 38, 53

*Hudson v. Ivey*,
383 So. 3d 636, 641 (Ala. 2023) ........ 58

*In re Cassell*,
688 F.3d 1291, 1300 (11th Cir. 2012) ........ 47

*Jones v. Dillard's, Inc.*,
331 F.3d 1259 (11th Cir. 2003) ..................... 48

*King v. Pridmore*,
961 F.3d 1135, 1145 (11th Cir. 2020) ..................... 55

*King v. State*,
674 So. 2d 1381, 1384 (Ala. Crim. App. 1995) ..................... 50

*King, Trinell v. Pridmore, Ricky, et al.*,
141 S.Ct. 2512 (U.S. Apr. 19, 2021) ..................... 51

*Kirkpatrick v. Geneva Cnty. Bd. of Educ.*,
2015 WL 5853778, at *3 (M.D. Ala. Oct. 6, 2015) ..................... 22, 24, 32, 36

*Lane v. Franks*,
134 S. Ct. 2369, 2378 (2014) ..................... 22, 23, 24, 26, 28, 29

*Latham v. Dept. of Corrections*,
927 So. 2d 815 (2005) ..................... 59, 63

*Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*,
132 F.4th 1232, 1239 (11th Cir. 2025) ..................... 51, 52

*Maggio v. Sipple*,
211 F.3d 1346, 1352 (11th Cir. 2000) ..................... 27, 28, 38

*McKinley v. Kaplan*,
262 F.3d 1146, 1150 (11th Cir. 2001) ..................... 30, 34, 25

*Melvin v. Troy Univ.*,
609 F. Supp. 3d 1262, 1266 (M.D. Ala. 2022) ..................... 20

*Mitchell v. Forsyth*,
472 U.S. 511, 526 (1985) ..................... 36

*Mitchell v. Town of Hayneville, Alabama*,
2020 WL 7480551, at *9 (M.D. Ala. Dec. 18, 2020) ..................... 67

*Moore v. Watson*,
429 So.2d 1036 (Ala.1983) ..................... 43

*Morgan v. Ford*,
6 F.3d 750, 754 (11th Cir. 1993) ..................... 27, 28

*Moss v. City of Pembroke Pines*,
782 F.3d 613, 622 (11th Cir. 2015) ..................... 29, 30, 34

*O'Boyle v. Thrasher*,
638 F. App'x 873, 879 (11th Cir. 2016) ..................... 40, 54, 65

*O'Laughlin v. Palm Beach Cnty.*,
30 F.4th 1045, 1050 (11th Cir. 2022) ..................... 22, 32

*Ohio Valley Conf. v. Jones*,
385 So. 3d 948, 968–69 (Ala. 2023) ..................... 66

*Oxford Asset Mgmt. v. Jaharis*,
297 F.3d. 1182, 1188 (11th Cir. 2002) ........................................................................ 19

*Patterson v. Gladwin Corp.*,
835 So. 2d 137, 142 (Ala. 2002)..................................................................................... 22

*Pearson v. Callahan*,
555 U.S. 223, 231 (2009)................................................................................................. 22

*Pearson v. Com. Bank of Ozark*,
2015 WL 5125626, at *9 (M.D. Ala. Aug. 31, 2015)...................................................... 61

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89, 106 (1984)................................................................................................... 45

*Pennington v. Taylor*,
776 F. Supp. 3d 1118, 1141 (M.D. Ala. 2025) ........................................................ 22, 35

*Pickering v. Board of Education*,
391 U.S. 563 (1968).................................................. 21, 24, 27, 28, 29, 30, 33, 35, 38, 39

*Pickett v. Matthews,*
192 So. 261 (Ala. 1939)................................................................................................... 50

*Raney v. Allstate Ins. Co.*,
370 F.3d 1086, 1089 (11th Cir.2004) .............................................................................. 61

*Renter's Realty v. Smith*,
322 So. 3d 1060, 1064 (Ala. Civ. App. 2020) ................................................................ 49

*Rice v. Alabama Surface Min. Comm'n*,
555 So. 2d 1079, 1081 (Ala. Civ. App. 1989) ................................................................ 49

*Riley v. Cornerstone Community Outreach, Inc.*,
57 So. 3d 704, 722 (Ala. 2010)..................................................................... 44, 45, 55, 59

*Roberts v. Ala. Dept. of Youth Servs.*,
2013 WL 4046383, at *2 (M.D. Ala. Aug. 9, 2013)................................................. 19, 63

*Ross v. Clayton Cnty.*,
173 F.3d 1305, 1311 (11th Cir. 1999) ...................................................................... 29, 30

*Rowe v. City of Fort Lauderdale*,
279 F.3d 1271, 1288 (11th Cir. 2002) ............................................................................. 62

*Sealey v. Stidham*,
2015 WL 5083998, at *9 (M.D. Ala. Aug. 27, 2015)...................................................... 61

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197, 204 (2020).................................................................................................. 50

*Sellers v. Nationwide Mut. Fire Ins. Co.*,
968 F.3d 1267, 1273 (11th Cir. 2020) ............................................................................. 57

*Shahar v. Bowers*,
114 F.3d 1097, 1104 (11th Cir. 1997) ...................................................................... 30, 35

*Simpson v. Van Ryzin,*
265 So.2d 569 (Ala. 1972) ........ 43

*Sims v. Metropolitan Dade Cnty.*,
972 F.2d 1230, 1236 (11th Cir. 1992) ........ 37

*Slay v. Hess*,
621 F. App'x 573, 575–76 (11th Cir. 2015) ........ 26

*State ex rel. Gray v. King*,
395 So. 2d 6, 7 (Ala. 1981) ........ 68

*Stough v. Gallagher*,
967 F.2d 1523, 1528 (11th Cir. 1992) ........ 29

*Summit Med. Assocs. v. Pryor*,
180 F.3d 1326, 1337, 1338 (11th Cir. 1999) ........ 56, 57, 59, 60

*Taylor v. Hughes*,
920 F.3d 729, 732 (11th Cir. 2019) ........ 37, 38, 53

*Thaeter v. Palm Beach Cty. Sheriff's Office*,
449 F.3d 1342, 1352 (11th Cir. 2006) ........ 19

*Tyne v. Time Warner Entm't Co.*,
336 F.3d 1286, 1291 (11th Cir. 2003) ........ 48, 62

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715, 726 (1966) ........ 61

*Vila v. Padron*,
484 F.3d 1334, 1339 (11th Cir. 2007) ........ 22, 32

*Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*,
875 So. 2d 1143, 1154 (Ala. 2003) ........ 68

*Wagner v. Lee Cnty.*,
678 F. App'x 913, 926–27 (11th Cir. 2017) ........ 26

*Watts v. Fla. Int'l Univ.*,
495 F.3d 1289, 1293–94 (11th Cir. 2007) ........ 28

*Whitson v. Staff Acquisition, Inc.*,
41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999) ........ 20

*Whole Woman's Health v. Jackson*,
595 U.S. 30, 39, 142 S.Ct. 522, 211 L.Ed.2d 316 (2021) ........ 22, 35

*Wilcox v. Andalusia City Sch. Bd. of Educ.*,
660 F. Supp. 3d 1167, 1184 (M.D. Ala. 2023) ........ 37

*Yellowhammer Fund v. Att'y Gen. of Alabama Steve Marshall*,
733 F. Supp. 3d 1167, 1175 (M.D. Ala. 2024) ........ 19

**Statutes**

42 U.S.C. §§ 1983 ... 21
ALA. CODE § 12-16-215. ... 27
ALA. CODE § 31-5-1 ... 15
ALA. CODE § 31-5-2 ... 15, 43
ALA. CODE § 31-5-3 ... 15, 69
ALA. CODE § 31-5-6 ... 15, 25, 31, 43, 44, 45, 47, 48, 49, 57, 59, 60, 63, 68
ALA. CODE § 31-5-7 ... 30, 31, 33, 69
ALA. CODE § 36-25-1 ... 66
ALA. CODE § 36-25-4 ... 27, 29, 30
ALA. CODE § 36-25-17 ... 16, 23, 25
ALA. CODE § 36-25-24 ... 63, 64, 66, 67
ALA. CONST. art I, § 14 ... 20
ALA. CONST. art V, § 112 ... 15
ALA. CONST. art V, § 113 ... 16, 42, 44, 48
ALA. CONST. art. V, § 120 ... 48, 49
U.S. CONST. art. I, §§ 1, 3 ... 49

**Other Authorities**

1 ANNALS OF CONG. 463 (1789) (J. Madison) ... 48
BLACK'S LAW DICTIONARY (11th ed. 2019) ... 19

**Rules**

FED. R. CIV. P. 10 ... 20
FED. R. CIV. P. 12 ... 12, 19, 20

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Governor Kay Ivey (the "Governor"), in her individual capacity and her official capacity as Governor of the State of Alabama, moves to dismiss the complaint (the "Complaint") of Rear Admiral W. Kent Davis (Ret.) (the "Plaintiff"), Doc. 1.

## INTRODUCTION

This case is about whether the Governor of Alabama may terminate a recalcitrant state executive-branch official and whether that official's dispute with her has any basis to proceed in federal court. After a long series of actions and statements by Plaintiff that, by his own account, seriously and self-evidently undermined the orderly functioning of state government, the Governor terminated Plaintiff from his position as Commissioner of the Alabama Department of Veterans Affairs (the "Department"). In response, Plaintiff has run to federal court and lodged a bevy of federal and state-law claims in hopes of returning to power and collecting from the State's coffers.

By his own admission, Plaintiff "stepped on some toes" within State government while serving as Commissioner. Doc. 1 ¶ 45. By his own admission, he publicly criticized the Alabama Legislature (the "Legislature") for—using his words—its "cuts to the GI Dependent Scholarship Program," its supposed "lack of support for veterans' mental health programs," and "for not providing [his agency] more [American Rescue Plan Act] funds, opioid settlement funds, or General Fund dollars." Doc. 1 ¶ 58. Again, by his own admission, one State cabinet agency terminated a grant-administration agreement with the Department and another threatened to do so after preparing its own, long list of "concerns" over Plaintiff's implementation of the grants. Doc. 1 ¶¶ 21; Doc. 1-3 at 13–14. Plaintiff then filed a complaint with the Alabama Ethics Commission against one of his fellow agency heads, which the Commission promptly dismissed as having "fail[ed] to satisfy the requirements for our consideration." Doc. 1-3 at 37. On this record, the Governor rightly terminated Plaintiff.

This inherently political dispute has no basis to proceed in *any* court—let alone this federal court of limited jurisdiction. Plaintiff's federal claims fail both on their merits and because of

sovereign and qualified immunity. Plaintiff's claim for First Amendment Retaliation (Count One) is grounded in speech that is unprotected by that Amendment because he admittedly made it pursuant to official duties as a public official, not as a private citizen, and because it self-evidently was of the kind that would upset the orderly functioning and proper administration of State government, Plaintiff's workplace as a public official. Meanwhile, lacking a property interest in his role as Commissioner, Plaintiff cannot state a claim for a violation of his federal due process rights, either (Count Two). Remarkably, Plaintiff concedes that he was "afforded his procedural due process rights," Doc. 1 ¶ 71, and instead attempts to ground his claim for violation of his *federal* due process rights in an alleged violation of *State* law. Such a theory is not cognizable under clear Eleventh Circuit precedent as either a substantive or procedural due process claim. And, in any event, all of Plaintiff's federal claims—even his federal claims for injunctive relief—are barred by sovereign and/or qualified immunity (Counts One through Three). Plaintiff's attempt to make a federal case out of an internal, State of Alabama executive-branch dispute thus fails.

With the federal claims dispatched, this Court should decline supplemental jurisdiction over Plaintiff's state-law claims (Counts Four through Eight). Indeed, the hodgepodge of State-law claims asserted by Plaintiff rest on twin State-law presumptions: (1) his contention that the Governor of Alabama lacks the power to terminate the head of a State executive-branch agency and (2) his insinuation that the Governor may not publicly explain her rationales for removing the head of a State executive-branch agency. These state-law questions deal with the Governor's power under the Alabama Constitution and are best addressed by State courts on certification to the Alabama Supreme Court—in the remote chance that they need be addressed at all.

That aside, those State-law claims are groundless. For multiple reasons, the Governor enjoys inherent authority to remove from office non-constitutional State executive officials, dooming Plaintiff's so-called employment claims. The Governor also may publicly explain her rationales for terminating such executive officials, undercutting Plaintiff's defamation and invasion of privacy claims. And from reasons ranging from lack of cause of action to failure to adequately plead his claims, Plaintiff's State-law claims should all be dismissed even before this

Court reaches the issue of state immunity and state-agent immunity, which similarly necessitate their dismissal.

Plaintiff is frustrated that he is no longer Commissioner of the Department. But frustration with the Governor's decision to terminate a State executive-branch official who repeatedly undermined State functions does not create federal jurisdiction or give rise to a cause of action of any vintage. This Court should dismiss Plaintiff's complaint in its entirely.

# FACTS

The Legislature established the State Board of Veterans Affairs (the "Board") in 1945. *See* ACTS OF ALABAMA 1945, No. 173, p. 304, § 2 (now codified at ALA. CODE § 31-5-1, *et seq.*). Although under the executive branch, the Department is not a constitutional component of the "executive department"—it is purely a creature of statute. *See* ALA. CONST. art V, § 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county."). The Legislature established the Board to "oversee" the Department, whose duties under state law include operating State veterans cemeteries and providing assistance to veterans. ALA. CODE §§ 31-5-2 & -5. Since 1945, the Legislature has amended the Board and Department's enabling statutes multiple times, including during the events made relevant by Plaintiff's lawsuit. *See* Act 2024-442, § 1 (effective Oct. 1, 2024); Act 2025-37, § 1 (effective March 18, 2025). When addressing the relevant statutory scheme this motion to dismiss (the "Motion") will cite to the statutes as they were in effect at the relevant time.

The Governor serves, and always has served, as the chair of the Board. Doc. 1 ¶ 6; ALA. CODE § 31-5-3(a) (effective to September 30, 2024); ALA. CODE § 31-5-3(a)(1) (effective October 1, 2024 to March 17, 2025). Plaintiff became the Commissioner of the Department on February 19, 2019. Doc. 1 ¶ 8. At all relevant times,[1] the Commissioner served as the "executive … officer of the [D]epartment," who had the statutory authority "to issue administrative orders and directives to all officials and employees in the department." ALA. CODE § 31-5-6(b) (effective to June 30, 2021); ALA. CODE § 31-5-6(b) (effective July 1, 2021 to September 30, 2024); ALA. CODE § 31-5-6(b) (effective October 1, 2024 to March 17, 2025). That Legislative delegation notwithstanding,

[1] The relevant period of the statutory framework is the window in which Plaintiff served as Commissioner: February 19, 2019 through October 22, 2024. As discussed below, however, statutory revisions following Plaintiff's termination are relevant for assessing the viability of Plaintiff's requested remedies—mainly his request for reinstatement. Under current law, the Governor has the undisputed statutory ability to terminate the Commissioner at will because he "serve[s] at the Governor's pleasure." ALA. CODE § 31-5-6(a).

the Governor, at all relevant times, maintained "the supreme executive power of [the] state," which is "vested" in her by the State Constitution. ALA. CONST. art V, § 113.

Plaintiff's tenure as Commissioner was marked by upheaval and disputes with other State executive branch officials. *See* Doc. 1-3 at 2–4. Plaintiff "mishandled the administration of [the] federal [American Rescue Plan Act ("ARPA")] grant program by failing to properly consult with other state agencies and by submitting, on a delayed basis, proposed grants that contained [numerous] problems." Doc. 1-3 at 2. Such mismanagement included "proposing—on a substantially delayed basis—uses of grant funds that would be ineligible under U.S. Treasury rules and regulations and/or state law or policy." Doc. 1-1 at 2. As a result, the Alabama Department of Mental Health ("ADMH") terminated its agreement to assist the Department in administering ARPA grant funds. Doc. 1-2 at 3.

On July 22, 2024, Plaintiff filed a complaint with the Alabama Ethics Commission against ADMH Commissioner Kim Boswell. Doc. 1 ¶ 31. Plaintiff filed his complaint "[p]ursuant" to his official duties as a "governmental agency head." Doc. 1 ¶ 31 (quoting ALA. CODE § 36-25-17 (a)). Further, Plaintiff alleges that he maintained confidentiality over the complaint and did not personally disclose it to the news media. Doc. 1 ¶¶ 30, 32. The Ethics Commission dismissed the complaint at the initial stage for "fail[ing] to satisfy the requirements for [its] consideration." Doc. 1 ¶ 33; Doc. 1-3.

Throughout his time in office, Plaintiff routinely criticized the State's veterans policy and the Governor's handling of veterans issues. *See* Doc. 1 ¶¶ 45, 58. Such statements included criticism of cuts to the GI Dependent Scholarship program; the ADMH's alleged lack of support for veterans programs; legislative allegations concerning the quality of care in State veterans homes; and lack of State funding for veterans mental health issues. Doc. 1 ¶¶ 45, 58.

In the face of Plaintiff's repeated efforts to interfere and undermine the State's veterans-affairs policies, the Governor took steps to remove him as Commissioner. On September 5, 2024, by letter, the Governor asked Plaintiff to resign. Doc. 1-1. In her letter, the Governor underscored that the Department, under his leadership, had mishandled the ARPA grant program, "proposing—

on a substantially delayed basis—uses of grant funds that would be ineligible under U.S. Treasury rules and regulations and/or state law or policy." Doc. 1-1 at 2. His actions "put in jeopardy the State of Alabama's ability to fulfill its obligations under ARPA and [Plaintiff's] agency's ability to most effectively serve veterans." Doc. 1-1 at 2. The Governor reiterated these serious issues in a September 6, 2024 letter, attaching (1) a letter from ADMH terminating its agreement to assist the Department in administering ARPA grant funds and (2) a letter from the State Department of Finance cataloging the "numerous concerns of [Plaintiff's agency's] handling of [ARPA] grants." Doc. 1-2 at 3. As the Governor explained, those letters "paint a picture of unjustified delay on the part of [Plaintiff's] agency, failure to heed the advice of experts whose assistance [Plaintiff] sought out, and a resulting general inability to manage the grant program." Doc. 1-2 at 3.

Plaintiff attended an in-person meeting with the Governor and several others on September 9, 2024. Doc. 1 ¶¶ 39 & 41. During that meeting, Plaintiff agreed to resign as Commissioner effective December 31, 2024. Doc. 1 ¶ 41. Plaintiff later reneged on that agreement. Doc. 1-3 at 3.

After engaging in a letter-writing campaign with Plaintiff, Plaintiff's agreement to resign, and Plaintiff's subsequent refusal to honor that agreement, the Governor took steps to terminate Plaintiff as Commissioner. On October 18, 2024, the Governor sent Plaintiff a letter (1) informing him that she was calling a special meeting of the Board to consider his removal as Commissioner and (2) listing seven bases for Plaintiff's termination "for cause":

- "General lack of cooperation" with other executive branch agencies, legislators, federal representatives, and the Governor's Office, in violation of state statute and executive order;
- "Mishandling of the ARPA grant program," which "jeopardized the State's ability to fulfill its [federal law] obligations";
- "Filing a frivolous ethics complaint" against an ADMH Commissioner;
- "Breach of agreement" by Plaintiff to resign his position;

- "Manipulation of the [Board] . . . by placing extreme pressure on some [Board members] to do and say things that went against [their] beliefs and the very principles on which [the Board] should stand";
- "[F]ailure to … 'reaffirm, in writing'" his prior commitment to resign; and
- The Governor's, the Board Vice Chair's, and legislative leaders' "general loss of trust and confidence" in Plaintiff.

Doc. 1-3. The Governor explicitly invited Plaintiff "to respond to the concerns … expressed in [her] letter" before the special meeting of the Board to be held on October 22, 2024. Doc. 1-3. Plaintiff also had the opportunity to provide a written response to the Governor's letter before that meeting. Doc. 1-3.

During the October 22, 2024 meeting—as Plaintiff himself concedes—Plaintiff was "afforded his procedural due process rights." Doc. 1 ¶ 71; Doc. 1-3. Following that meeting, the Governor terminated Plaintiff as Commissioner. Doc. 1 ¶ 48; Doc. 1-4.

## STANDARD OF REVIEW

The Governor moves to dismiss Plaintiffs' Complaint on two bases: (1) failure to state a claim and (2) lack of subject-matter jurisdiction.

***First,*** the Governor moves to dismiss the Complaint because Plaintiff has failed to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), a complaint 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Yellowhammer Fund v. Att'y Gen. of Alabama Steve Marshall*, 733 F. Supp. 3d 1167, 1175 (M.D. Ala. 2024) (Thompson, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Crucially, however, the court need not accept as true 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'" *Coral Ridge Ministries Media v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1267–68 (M.D. Ala. 2019) (Thompson, J.), *aff'd*, 6 F.4th 1247 (11th Cir. 2021), (quoting *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d. 1182, 1188 (11th Cir. 2002)); *see also Roberts v. Ala. Dept. of Youth Servs.*, 2013 WL 4046383, at *2 (M.D. Ala. Aug. 9, 2013) (Thompson, J.) ("[G]eneralizations, conclusory allegations, blanket statements, and implications will not" allow the complaint to survive a motion to dismiss). "Conclusory allegations are those that express 'a factual inference without stating the underlying facts on which the inference is based.'" *Coral Ridge Ministries Media*, 406 F. Supp. 3d at 1267–68 (quoting *Conclusory*, BLACK'S LAW DICTIONARY (11th ed. 2019)). Nor must the Court accept Plaintiff's "formulaic recitation[s] of the elements of a cause of action." *Hammonds v. Montgomery Children's Specialty Ctr.*, 2022 WL 949830, at *1 (M.D. Ala. Mar. 29, 2022) (Thompson, J.) (quoting *Iqbal*, 556 U.S. at 678).

This Court may consider the exhibits attached to the Complaint (*i.e.*, Docs. 1-1 through 1-4) without converting this motion to dismiss into a motion for summary judgment. *Thaeter v. Palm*

*Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). A district court may consider exhibits attached to the complaint on a Rule 12(b)(6) motion because exhibits are part of the pleadings. *Id.*; FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

***Second***, the Governor moves to dismiss the claims against her in her official capacity because the Court lacks subject matter jurisdiction over her as a result of the State of Alabama's sovereign immunity. *See* FED. R. CIV. P. 12(b)(1); ALA. CONST. art I, § 14. A motion to dismiss on the basis of sovereign immunity "is equivalent to a facial attack on the court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999) (Thompson, J.) (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) (dismissal on a sovereign-immunity ground is under Rule 12(b)(1) because no subject-matter jurisdiction exists)). "A facial attack [under Rule 12(b)(1)] questions the sufficiency of the pleading and the plaintiff enjoys similar safeguards to those provided when opposing a motion to dismiss under . . . Rule . . . 12(b)(6)." *Melvin v. Troy Univ.*, 609 F. Supp. 3d 1262, 1266 (M.D. Ala. 2022) (Thompson, J.) (quoting *Whitson*, 41 F. Supp. 2d at 1296).

# ARGUMENT

## I. Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law (Count I).

Plaintiff's first claim against the Governor is for "First Amendment Retaliation," brought pursuant to 42 U.S.C. §§ 1983 and 1985. Doc. 1 ¶¶ 53–64. Broadly speaking, Plaintiff alleges that the Governor terminated him in "substantial part" because of two different categories of his speech: (1) an "official ethics complaint" Plaintiff "filed with the Alabama Ethics Commission" that he alleges he was "obligated by law to" file; and (2) a laundry list of "statements" Plaintiff made on topics concerning veterans affairs to unknown audiences, in unknown fora, at unknown times. Doc. 1 ¶¶ 30, 45, 58, 59. Plaintiff demands monetary and equitable relief, the latter in the form of reinstatement. Doc. 1 ¶¶ 64(A)–(J). The retaliation claim fails based on arguments that fall into two broad categories: (1) merits and (2) immunity.

*First*, the First-Amendment retaliation claim fails on the merits. In the speech allegedly giving rise to his termination, Plaintiff was not speaking as a citizen on matters of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Rather, he admittedly spoke "pursuant to his duties" as Commissioner, thus rendering his speech unprotected. *See id.* at 421. What is more, Plaintiff's claim does not survive the second step of the public-employee-speech analysis, either: the *Pickering* balancing test.[2] *See id.* at 418 (citing *Pickering*, 391 U.S. at 568). Under that balancing approach, it simply cannot be that the First Amendment prohibits the Governor from terminating a public-facing, appointed agency head based on his criticisms of the State's policies concerning the very agency he had been tasked with leading. *See id.* at 419 (recognizing the harm to the government from critical employee speech that can "contravene governmental policies or

[2] The balancing of interests under the test from *Pickering v. Board of Education*, 391 U.S. 563 (1968), is the second step of First-Amendment-retaliation analysis that this Court can only reach if Plaintiff was speaking as a private citizen on a matter of public concern. *See Connick v. Myers,* 461 U.S. 138, 146–152 (1983). As discussed below, because Plaintiff was not speaking as a private citizen on matters of public concern, this Court need not reach the balancing stage. *See Garcetti*, 547 U.S. at 421 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

impair the proper performance of governmental functions"). Otherwise, governors in Alabama and around the country would be powerless to make key personnel changes to install officials who are aligned with the State's policy goals.

*Second*, the doctrines of sovereign immunity and qualified immunity prevent Plaintiff from obtaining the relief he seeks. Sovereign immunity bars Plaintiff's claim not only for monetary relief but also for injunctive relief against the Governor in her official capacity. *See Pennington v. Taylor*, 776 F. Supp. 3d 1118, 1141 (M.D. Ala. 2025) (Thompson, J.) (citing *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39, 142 S.Ct. 522, 211 L.Ed.2d 316 (2021)); *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002) (wall of State sovereign immunity "is nearly impregnable"). Qualified immunity likewise bars the claim against her in her individual capacity. Although the Governor is correct on the merits of Plaintiff's First Amendment retaliation claim, she certainly did not violate any of Plaintiff's "clearly established" rights. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

**A. Plaintiff's First Amendment Retaliation Claim Fails on the Merits.**

"At all times material," Plaintiff "served" as Commissioner of the Department, and was thus a "public employee" of the State of Alabama as that term is used in First Amendment jurisprudence. Doc. 1 ¶ 3. "Although it's well-settled that a public employee may not be discharged or punished in retaliation for exercising [his] right to free speech under the First Amendment, it's also well-settled that a public employee's free-speech rights are not absolute." *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1050 (11th Cir. 2022). As this Court has previously recognized, the test for whether a public employee can successfully bring a First Amendment retaliation claim involves a threefold inquiry. "To set forth a free-speech claim," Plaintiff must show that: "(1) [he] was speaking as a citizen on a matter of public concern; (2) [his] interests as a citizen outweighed the interests of the State as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action.'" *Kirkpatrick v. Geneva Cnty. Bd. of Educ.*, 2015 WL 5853778, at *3 (M.D. Ala. Oct. 6, 2015) (Thompson, J.) (citing *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) and *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014)).

Plaintiff alleges that the Governor impermissibly retaliated against him for engaging in two forms of protected speech. First, he alleges that the Governor fired him because she disliked the "Ethics Complaint" he filed against ADMH Commissioner Kim Boswell, "despite [Plaintiff's] legal requirement to do so." Doc. 1 ¶ 34. Plaintiff filed the Ethics Complaint "[p]ursuant" to his official duties as a "governmental agency head." Doc. 1 ¶ 31 (quoting ALA. CODE § 36-25-17(a)).

Second, Plaintiff throws the kitchen sink at the Governor, alleging that she fired him for "public statements" he made "regarding matters of public interest and concern," such as his:

- "[C]riticism of the [] [L]egislature's cuts to the GI Dependent Scholarship Program";
- "[C]riticism of the [L]egislature's and ADMH Commissioner's general lack of support for veterans' mental health programs";
- "[C]riticism of false criminal allegations by Rep. Ed Oliver directed at the quality of care in state veterans homes";
- "[C]riticism of the [L]egislature for not providing more ARPA funds, opioid settlement funds, or General Fund dollars to address critical problems with veterans mental health"; and
- "[C]riticism of Rep. Mike Rogers and his staffer Chris Brinson for their past actions."

Doc. 1 ¶ 45. The Complaint does not say when these statements were made, to whom, and in what context. *See, e.g.*, Doc. 1 ¶¶ 45 & 58.[3]

Because Plaintiff frames these two categories of speech as separate bases for his termination, the Governor addresses them separately below. But the result is the same: neither category of speech was protected, and Plaintiff's claim fails.

[3] According to the Complaint, the Governor expressed her disapproval of these "public statements" in her October 18, 2024 letter to Plaintiff, which is attached to the Complaint as Exhibit C. *See* Doc. 1-3. But that letter does not identify *any* of the other "public statements" listed in the Complaint—just the "frivolous ethics complaint." *Compare* Doc 1 ¶ 45 (describing the Governor's October 18, 2024 letter), *with* Doc. 1-3 (the October 18, 2024 letter). These "public statements" are dropped into the Complaint with zero context.

For the first category, his Ethics Complaint, Plaintiff spoke—by his own admission—pursuant to his official duties as Commissioner. That is classic *Garcetti*. 547 U.S. at 421 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). That fact defeats his claim that the Ethics Complaint was protected speech. For the second potpourri category, Plaintiff has failed to make allegations sufficient to show he spoke as a citizen on a matter of public concern and not as a public employee. Indeed, every alleged "public statement" concerns the State's management of veterans affairs. Assuming Plaintiff has satisfied federal pleading standards for a claim based on this category of his speech, the *Pickering* balancing test defeats such a claim as a matter of law.

### 1. Plaintiff's Ethics Complaint Was Not Protected Speech.

#### a. Plaintiff did not speak as a citizen on a matter of public concern.

"To state a claim that a government employer took disciplinary action in retaliation for constitutionally protected speech, a public employee must prove, as a threshold matter, that [he] spoke as a citizen on a matter of public concern." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1281-82 (11th Cir. 2009) (citations and quotations omitted), *abrogated in part by Lane,* 134 S.Ct. at 2376.[4] Here, the lack of protection afforded to Plaintiff's Ethics Complaint "turns on that threshold inquiry." *Id.* at 1282. This analysis has two sub-inquiries: (1) whether the plaintiff spoke as a "citizen"; and, if so, (2) whether the plaintiff spoke on a "matter of public concern." *Id.* The answer to both of these questions is "no."

[4] This Court previously recognized *Abdur-Rahman*'s partial abrogation by *Lane*. *Kirkpatrick*, 2015 WL 5853778, at *4. However, *Abdur-Rahman*'s partial abrogation is not relevant here because Plaintiff spoke "pursuant to official duties." *See id.* at *4.

Plaintiff's First Amendment retaliation claim does not clear its first hurdle because, with respect to his Ethics Complaint, he spoke as Commissioner, not as a "citizen." *See id.*[5] "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. That is precisely what Plaintiff alleges here. Throughout his Complaint, Plaintiff makes clear that he filed the Ethics Complaint because he was under a legal duty to do so as Commissioner. *See, e.g.*, Doc. 1 ¶ 30 ("Commissioner Davis immediately and forcefully noted … as an agency head, he was obligated by law to report those concerns to the Ethics Commission"); *id.*, ¶ 31 ("[p]ursuant to that requirement," under ALA. CODE § 36-25-17(a), "Davis filed an ethics complaint against ADMH Commissioner Boswell and others"); *id.*, ¶ 33 ("On August 27, 2024, the Ethics Commission … thank[ed] him for understanding his obligation under Alabama Code §36-25-17(a) to report the entire issue"); *id.*, ¶ 58 (arguing "Davis's constitutionally protected speech was encompassed in an official ethics complaint filed with the Alabama Ethics Commission"). Plaintiff's own allegations doom his retaliation claim under the analysis of *Garcetti* and its progeny.

Deference to the substance and quality of his allegations aide, Plaintiff is legally correct about the nature of his speech. He, as a matter of law, spoke in the Ethics Complaint to satisfy his duties as Commissioner. Section 36-25-17(a) of the Alabama Code provides that "[e]very governmental agency head shall within 10 days file reports with the commission on any matters that come to his or her attention in his or her official capacity which constitute a violation of this chapter." As Commissioner, and when he filed the Ethics Complaint, Plaintiff was the the Department's "governmental agency head." *See* ALA. CODE § 31-5-6(c) (effective July 1, 2021 to September 30, 2024) ("The State Department of Veterans' Affairs, acting through the State Service Commissioner, shall be the designated agency of the State of Alabama to represent the state and

[5] Whether a public employee spoke as a citizen is a "question[ ] of law for the court to resolve." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015). The Court can thus address this issue in the context of a motion to dismiss.

its veterans before the United States Veterans' Administration, or any other agency dealing with the interest of the veteran."); *see also* Doc. 1 ¶ 30 (alleging that Plaintiff is the "agency head" for the Department). Thus, to the extent he believed the allegations against ADMH Commissioner Boswell made by other Board members "were ethics violations"—which he alleges he did—then as an agency head, he was obligated by law to report those concerns to the Ethics Commission. Doc. 1 ¶¶ 30, 31, 33.

The speech contained within the Ethics Complaint was, as he "acknowledges in [his] [] Complaint," clearly "part of [his] job." *Chambers v. Cherokee Cnty.*, 743 F. App'x 960, 963 (11th Cir. 2018) (per curiam) (public employee's speech not protected because it was not made as a private citizen). "Speech that owes its existence to the official duties of public employees," like Plaintiff's reporting obligations as agency head, "is not citizen speech." *Abdur–Rahman*, 567 F.3d at 1285. Thus, "because [his] speech fell squarely within the scope of [his] official duties" as Commissioner, his "allegations do not implicate the First Amendment's protections." *Chambers*, 743 F. App'x at 963; *see also Wagner v. Lee Cnty.*, 678 F. App'x 913, 926–27 (11th Cir. 2017) ("Because [plaintiff] made these statements in accordance with her ordinary duties as a[] [public] employee, she was speaking in her capacity as an employee rather than in her capacity as a citizen and thus cannot prevail on a claim for First Amendment retaliation."); *Slay v. Hess*, 621 F. App'x 573, 575–76 (11th Cir. 2015) (per curiam) (plaintiff's "internal complaints about how her time was allotted on the time sheets—even accusations that her supervisors were falsely allotting that time—did not remove her time sheet responsibilities from the normal course of her job duties and transform her complaints into constitutionally protected speech.").

At bottom, Plaintiff's allegations concerning the Ethics Complaint only support the conclusion that his statements to the Ethics Commission were made "in accordance with or in furtherance of the ordinary responsibilities of [his] employment" as Commissioner. *See Alves*, 804 F.3d at 1162. That is not enough—even after *Lane*. *See id.* at 1153, 1163 (concluding that public employees' "written grievance" about their supervisor's mismanagement and "ethical issues" was unprotected employee speech). The Court need proceed no further in its analysis of Plaintiff's

retaliation claim as to the Ethics Complaint because he failed to satisfy the threshold requirement of speaking in his capacity as a private citizen. *See Abdur-Rahman*, 567 F.3d at 1281–82.

In any event, the Ethics Complaint does not qualify as speech "on a matter of public concern." *See Garcetti*, 547 U.S. at 418 (citing *Pickering*, 391 U.S. at 568). "[T]he mere fact that the topic of" Plaintiff's "speech was one in which the public might or would have had a great interest is of little moment." *Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (quoting *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993)). As the Eleventh Circuit has "emphasized [,] the relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is 'whether the purpose of [the plaintiff's] speech was to raise issues of public concern.'" *Id.* (quoting *Morgan,* 6 F.3d at 754). This is far less likely to be true when the speech takes "the form of complaints to official bodies" and does "not in any way draw 'the public at large or its concerns into the picture.'" *Id.* (quoting *Morgan,* 6 F.3d at 754).

As in both *Morgan* and *Maggio*, Plaintiff "does not allege that" his Ethics Complaint was made to or was "open to the public." *Id.* at 1353. He alleges the opposite. Doc. 1 ¶ 30 (noting the "the extreme confidentiality of the issue[s]" in the Ethics Complaint); *id.*, ¶ 32 (alleging that "Davis did not" disclose the contents of the Ethics Complaint to the news media). Indeed, secrecy is the coin of the realm for ethics complaints. Under Alabama ethics law, "[e]xcept as necessary to permit the sharing of information and evidence with the Attorney General or a district attorney, a complaint . . . together with any statement, evidence, or information received from the complainant . . . shall be protected by and subject to the same restrictions relating to secrecy and nondisclosure of information, conversation, knowledge, or evidence of Sections 12-16-214 to 12-16-216" of the Alabama Code, known as the Grand Jury Secrecy Act. ALA. CODE § 36-25-4(c). Under the Grand Jury Secrecy Act, no complainant "shall willfully at any time directly or indirectly, conditionally or unconditionally, by any means whatever, reveal, disclose or divulge or attempt or endeavor to reveal, disclose or divulge or cause to be revealed, disclosed or divulged, any knowledge or information pertaining to" the complaint. *See* ALA. CODE § 12-16-215.

In comporting with the confidential, non-public-facing nature of his obligations under Alabama law, Plaintiff runs squarely into the same problems that tripped up the plaintiffs in *Maggio* and *Morgan*. Plaintiff's Ethics Complaint mirrors the unprotected speech in those cases because he similarly "directed" his speech to "administrative bodies" and "related [his] concerns to official administrative bodies but not to the public." *Maggio*, 211 F.3d at 1353. Plaintiff does "not allege that [his] speech took place in a public forum." *Id.* at 1354. His speech thus does not qualify as speech on a matter of public concern.

**b. The *Pickering* Balancing Test favors the Governor's interests.**

The Court need not reach the balancing step because Plaintiff's speech, by his own admission, was not made as a private citizen on a matter of public concern, thus depriving it of First Amendment protection. *See Garcetti*, 547 U.S. at 421. If the Court rejects the Governor's categorical argument that the Ethics Complaint is not protected, Plaintiff's Ethics Complaint does not survive the second part of the public-employee-retaliation analysis, *Pickering* balancing, either. "Even though it requires balancing," this Court "may apply *Pickering* at the motion to dismiss stage." *Biro v. City of Tallahassee*, No. 24-10594, 2025 WL 1068229, at *4 (11th Cir. Apr. 9, 2025) (per curiam) (citing *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1293–94 (11th Cir. 2007)).

Just because a public employee speaks as a private citizen on a matter of public concern does not automatically mean his speech protected. If he establishes he spoke as a private citizen on a matter of public concern, "then *the possibility* of a First Amendment claim arises." *Garcetti*, 547 U.S. at 418 (emphasis added); *see also Lane*, 573 U.S. at 242 (favorable analysis for a plaintiff on step one of the *Garcetti* test "does not settle the matter"). The Court must then "delicate[ly] balance" the employee's interest in engaging in the subject expression against the government's various interests, such as "the proper performance of government functions," "efficient[] and effective[] operation," and "maintain[ing] proper discipline in public service.'" *Garcetti*, 547 U.S. at 419, 420, 423; *Lane*, 573 U.S. at 242 (quotations and citation omitted); *see also Pickering*, 391

U.S. at 568. Only if the balancing of those interests tips the "scale" to the employee's "side" does Plaintiff have a valid claim for First Amendment retaliation. *Lane*, 573 U.S. at 242.

Under Eleventh Circuit precedent, this Court must consider three factors when performing a *Pickering* balancing analysis: "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Chesser v. Sparks*, 248 F.3d 1117, 1124 (11th Cir. 2001) (citation and quotation omitted). Eleventh Circuit cases have addressed the "competing interests" of the *Pickering* factors, including the context factor, "on a case-by-case basis." *See Stough v. Gallagher*, 967 F.2d 1523, 1528 (11th Cir. 1992). All three factors favor the Governor.

Plaintiff loses on factor one because his alleged speech "impede[d] the government's ability to perform its duties efficiently." *Chesser*, 248 F.3d at 1124. Critically, the Governor "need not demonstrate that" Plaintiff has actually "impeded the effectiveness of its operations for this factor to weigh in [her] favor." *Biro*, 2025 WL 1068229, at *5. Merely "[a] reasonable possibility of adverse harm is all that is required." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 622 (11th Cir. 2015); *see also Connick*, 461 U.S. at 152 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."); *Ross v. Clayton Cnty.*, 173 F.3d 1305, 1311 (11th Cir. 1999) ("[A] requirement of a showing of actual disruption would be overly burdensome to the public employer.")..

Plaintiff's own allegations and incorporated exhibits demonstrate why the first factor works against him. Plaintiff's Ethics Complaint was so "frivolous" that it was dismissed by the Ethics Commission at the initial stage without further investigation. Doc. 1-3 ("the Executive Director of the Ethics Commission dismissed" Plaintiff's complaint for "fail[ing] to satisfy the requirements for [his] consideration"); *see also* Doc. 1 ¶ 33. Ethics investigations are not costless exercises. They take up valuable State time and resources. *See, e.g.*, ALA. CODE § 36-25-4 (prescribing the process for Ethics Commission investigations). And time and resources are spoiled when, as here, complaints are filed that either do "not allege a violation or [where] reasonable cause does not

exist." *See* ALA. CODE § 36-25-4(d). The State cannot "efficiently and effectively operat[e]" when State agency heads are firing patently unmeritorious ethics complaints at each other across the bow. *See Garcetti*, 547 U.S. at 421.[6]

The Governor—and the State of Alabama as a whole—has an interest in cross-executive-agency cooperation and functionality. Indeed, one of Plaintiff's duties as head of the Department was to "[c]ooperate with all other heads of the state departments." *See* ALA. CODE § 31-5-7 (effective from enactment through September 30, 2024). In filing an unsubstantiated Ethics Complaint against an ADMH commissioner—an agency with which the Department must work to carry out its duties—he undermined cross-departmental trust and also lost the "trust and confidence" of the Governor. *See* Doc. 1-3. The State had an interest in terminating Plaintiff to maintain "the proper performance of government function[s]," which were undermined by Plaintiff's "weaponization of the ethics complaint process." *See Garcetti*, 547 U.S. at 419, 420, 423; Doc. 1-3. The quickly-dismissed, unsupported Ethics Complaint supplies more than a "[r]easonable possibility of adverse harm" to State interests. *Moss*, 782 F.3d at 622.

Worse for Plaintiff, he cannot plead ***any*** facts that would allow him to win on the context factor. His official role as Commissioner precludes him from stating a claim for First Amendment retaliation because "the context factor weighs for the government for speech by a public-facing employee whose position involves public contact." *See Biro*, 2025 WL 1068229, at *6 (citing *Shahar v. Bowers*, 114 F.3d 1097, 1104 (11th Cir. 1997)). "Indeed, a public-facing employee's speech might 'interfere with the [government's] ability to handle certain kinds of controversial matters' or might 'harm the public perception of the [government.]'" *Id.* (quoting *Shahar*, 114 F.3d at 1104). "Accordingly, the speech of a public-facing employee" like Plaintiff "tips the *Pickering* balance in favor of the government as an employer." *Id.* (quoting *McKinley v. Kaplan*, 262 F.3d

[6] There is no tension between this argument and the Governor's argument that the Ethics Complaint constituted official (and unprotected) speech under *Garcetti*. *See supra* at 24. Because the Court can only reach the *Pickering* balancing test if it rejects the Governor's initial arguments that Plaintiff did not speak as a private citizen on a matter of public concern, this argument is made as an alternative basis for dismissal under the second stage of the analysis.

1146, 1150 (11th Cir. 2001)). That, too, ends the First Amendment analysis and requires judgment for the Governor.

The position of Commissioner undeniably qualifies as "public-facing employee" as that term is used in First Amendment jurisprudence. Under the versions of the relevant statutes in effect through the time of Plaintiff's termination, the Commissioner served as the State's representative to the federal government on issues of veterans affairs. *See, e.g.*, ALA. CODE § 31-5-6(c) (effective October 1, 2024 to March 17, 2025). The Commissioner was required to "[a]ssist all resident veterans and their relatives, beneficiaries, and dependents in receiving from the United States and this state all compensation, pensions, hospitalization, insurance, education, employment, loan guarantees, or any other aid or benefit to which they may be or may become entitled," and "[c]ooperate and negotiate with the federal government and all national, state, and local governmental or private agencies to secure additional services or benefits for veterans, their families, and their dependents who are residents of this state." ALA. CODE § 31-5-7(b)(7) & (8) (effective October 1, 2024 to March 17, 2025). The public-facing nature of Plaintiff's former office is baked into the job description.

Plaintiff was not some anonymous State employee tucked away; he was the face (and head) of a major State agency tasked with assisting Alabama's resident veterans. ALA. CODE § 31-5-6(c) (effective October 1, 2024 to March 17, 2025) ("The department, acting through the commissioner, shall be the designated agency of this state to represent the state and its veterans before the United States Department of Veterans Affairs or any other agency dealing with the interests of veterans."). His speech undermined the State's ability to effectively operate free from time consuming, costly, meritless proceedings, and that speech from a public-facing agency head was thus not protected.

**2. Plaintiff's Laundry List of Other Alleged Speech Cannot Support a Retaliation Claim, Either.**

Apart from the Ethics Complaint, Plaintiff alleges that the Governor retaliated against him for a host of "other speech," pleaded in laundry list fashion. *See* Doc. 1 ¶¶ 45 & 58. This speech fails to salvage Plaintiff's First Amendment retaliation claim.

**a. Plaintiff has not adequately pleaded retaliation based on his "other … speech."**

As a threshold matter, Plaintiff has not satisfied the bare minimum under federal pleading standards to state a First Amendment retaliation claim based on his "other forms of speech." *See supra* at 19 (setting out federal pleading standards); Doc. 1 ¶ 58. Put simply, he has failed to plead enough facts to permit the Court to engage in the analysis to determine whether any of these "other forms of speech" were protected—or indeed whether they played a "substantial or motivating role" in the Governor's removal of Plaintiff. [7] *Kirkpatrick*, 2015 WL 5853778, at *3 (citing *Vila*, 484 F.3d at 1339, and *Lane*, 134 S. Ct. at 2378).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.[8] *See also O'Laughlin*, 30 F.4th at 1051 (applying that same analysis). Plaintiff has not alleged ***any*** facts about "form" or "context" of any of these statements; he merely lists them (twice) without any allegations about the "manner, time and place of the speech" and "the context within which the speech was made." *See Connick*, 461 U.S. at 147–48; *Chesser*, 248 F.3d at 1124. Absent any facts about the "form" or "context" of this speech, Plaintiff cannot plausibly state a retaliation claim because the Court cannot assess whether Plaintiff's speech qualifies as touching on matters of public concern. *See id.*; *Iqbal*, 556 U.S. at 678–79.

Similarly, the complaint includes no facts even hinting that this "other speech" motivated the Governor to remove Plaintiff from his position, or even that she was aware of this other speech before he filed the Complaint. An essential element of any First Amendment retaliation claim is

[7] Even giving Plaintiff every benefit of the doubt, none of the letters from the Governor to Plaintiff attached to the Complaint make any mention of these "other forms of speech." *See* Doc. 1-1, Doc. 1-2, Doc. 1-3, Doc. 1-4.

[8] In laying out the test for this analysis, the Supreme Court made clear that "[t]he inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7.

that the speech at issue motivated the adverse employment action. Plaintiff's failure to include facts supporting this element thus proves fatal to his claim with respect to this alleged speech.

**b. Plaintiff spoke as head of the Department—not as a private citizen.**

Alternatively, assuming missing facts can be read into his Complaint, Plaintiff was not speaking as a private citizen, but rather as the "agency head" of the Department, charged under state law to "[c]ooperate . . . with the federal government and all national, state, and local government or private agencies." ALA. CODE § 31-5-7(b)(8). Again, Plaintiff's own allegations work against him. The only fact the Court has before it on this point is that Plaintiff made these statements while he was "serving as Commissioner of" the Department. *See* Doc. 1 ¶ 3. And each of the "other forms of speech" fall squarely within his policy domain as Department Commissioner. *See* Doc. 1 ¶¶ 45 & 58 (speaking on matters "related to," among others: (1) State cuts to GI Dependent Scholarship program; (2) criticism of the ADMH's lack of support for veterans programs; (3) response to allegations concerning the quality of care in State veterans homes; and (4) lack of State funding for veterans mental health issues).[9] Plaintiff has not pleaded any facts that allow the Court to even infer he spoke as a private citizen when addressing these issues. Absent such allegations, his claim fails.

**c. The *Pickering* Balancing Test does not prohibit a governor from firing an executive official based on policy disagreements.**

Assuming Plaintiff's claim makes it this far, this speech must also survive the *Pickering* balancing test. It cannot. Again, this Court must consider "(1) whether the speech at issue impedes

[9] Plaintiff also alleges that he was retaliated against for his speech criticizing "Rep. Mike Rogers and his staffer Chris Brinson for their past actions." Doc. 1 ¶ 45 & 58. What exactly those "past actions" were—let alone when, where, how, and why those allegations were made—are anyone's guess. So, as to this statement, Plaintiff has not even plausibly pleaded the content of the supposedly protected speech. *See Connick*, 461 U.S. at 147–48; *Iqbal*, 556 U.S. at 678–79. Plaintiff's claim cannot cling to that allegation to survive. In any event, because the Commissioner is required to "[c]ooperate and negotiate with the federal government … to secure additional services or benefits," ALA. CODE §31-5-7(b)(8), comments regarding members of Congress and their staffs fell squarely within Plaintiff's job duties.

the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Chesser*, 248 F.3d at 1124. Yet again, the greater weight of the factors favors the Governor.

Plaintiff's alleged speech "impede[d] the government's ability to perform its duties efficiently." *Chesser*, 248 F.3d at 1124. As was true in the analysis of the Ethics Complaint, *supra* at 29, the Governor need not demonstrate that" Plaintiff has actually "impeded the effectiveness of its operations for this factor to weigh in [her] favor." *Biro,* 2025 WL 1068229, at *5. "A reasonable possibility of adverse harm is" enough. *Moss*, 782 F.3d at 622.

Plaintiff's speech was highly critical of State veterans affairs policy—the policy area directly implicated in his policymaking duties as Commissioner. *See* Doc. 1 ¶¶ 45 & 58. "[G]overnments have a strong interest in staffing their offices with employees that they fully trust, particularly when the employees occupy advisory or policymaking roles." *Biro*, 2025 WL 1068229, at *7 (quoting *McKinley*, 262 F.3d at 1150). It does not take a leap of logic to see how having a State Commissioner of Veterans Affairs who repeatedly criticizes the State's ongoing policies concerning veterans affairs impedes the government's ability to enact its chosen policies concerning veterans affairs. At bottom, the Governor and the State are entitled to agency heads who work to further, rather than impede, the State's policies in the areas those agency heads oversee. It is thus "reasonabl[y] possib[le]" that Plaintiff's speech could have caused "adverse harm" to the State's operations. *Moss*, 782 F.3d at 622.

Plaintiff has failed to plead ***any*** facts concerning the "manner, time and place of the speech" and "the context within which the speech was made." *Chesser,* 248 F.3d at 1124. Thus, he has not pleaded facts sufficient to allow the Court to determine whether his speech was protected—as is his burden. *See, e.g.*, *Hartwell v. City of Montgomery, AL*, 487 F. Supp. 2d 1313, 1321 (M.D. Ala. 2007) (Thompson, J.) (burden on plaintiff to establish elements of retaliation claim).

Once again, as discussed above *supra* at 29-30, Plaintiff cannot plead ***any*** facts that would allow him to win on the context factor because "the context factor weighs for the government for speech by a public-facing employee whose position involves public contact." *See Biro*, 2025 WL

1068229, at *6 (citing *Shahar*, 114 F.3d at 1104). And because Plaintiff was a public-facing employee, see *supra* at 30, his position as Commissioner "tips the *Pickering* balance in favor of the government as an employer." *Id.* (quoting *McKinley*, 262 F.3d at 1150).

* * *

The balancing of the interests under *Pickering* does not yield a close call. As a public-facing agency head criticizing State policy in the very area he was tasked with shepherding, his speech is not entitled to constitutional protection. Plaintiff's retaliation claim based on his "other forms of speech" fails.

### B. Immunity Precludes Plaintiff from Obtaining Relief for His First Amendment Retaliation Claim.

#### 1. The Governor Is Entitled to Sovereign Immunity for Claims Brought Against Her in Her Official Capacity for Money Damages.

Plaintiff brings his First Amendment retaliation claim against the Governor "in [] her … official capacity," seeking various forms of money damages. Doc. 1 ¶¶ 55 & 64(B), (C), (D), (E), (G), (H), and (I). To this extent, his claim is barred by sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Pennington*, 776 F. Supp. 3d at 1141 (quoting *Whole Woman's Health*, 595 U.S. at 39). "State officials, acting in their official capacities, are cloaked with a State's sovereign immunity. And, unless they are stripped of that cloak, any claims against them must be dismissed from federal court." *Id.* (internal citation omitted). Absent a valid waiver, a state official "may not be sued in federal court for either money damages or injunctive relief." *Cobb v. Alabama*, 2011 WL 3666696, at *2 (M.D. Ala. Aug. 22, 2011) (Thompson, J.) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).

Nor does Plaintiff's allegations of "fraud," "bad faith," or other pejoratives permit him to scale the wall of sovereign immunity. Alabama has not waived its sovereign immunity for claims brought against State officers in their official capacity, even where a plaintiff alleges "fraud," "bad

faith," or "mistaken interpretation of law." *See Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013). The Court must accordingly dismiss Count I against the Governor in her official capacity to the extent it seeks monetary relief.

**2. The Governor Is Entitled to Qualified Immunity to the Extent Plaintiff Seeks Monetary Relief Against Her in Her Individual Capacity.**

Plaintiff also asserts his First Amendment retaliation claim against the Governor in her individual capacity. Doc. 1 ¶ 55. To the extent he seeks relief against her in that capacity, the Governor is entitled to qualified immunity.[10]

As the Eleventh Circuit recently reiterated, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Foulke*, 2024 WL 2761778, at *5 (internal citation and quotation marks omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Brown v. Dunn*, 2021 WL 4523498, at *2 (M.D. Ala. Oct. 4, 2021) (Thompson, J.) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

To "receive" the protections of "qualified immunity," the Governor "must first prove that [she] was acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (citation omitted). If she "makes this showing, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (citation and quotation omitted). "To defeat qualified immunity," Plaintiff must establish that "(1) the relevant facts must set forth a violation of a constitutional right, and (2) the

[10] "Qualified immunity is routinely raised and addressed at the motion-to-dismiss stage, and its 'basic thrust ... is to free officials from the concerns of litigation, including avoidance of disruptive discovery.'" *Kirkpatrick v. Geneva Cnty. Bd. of Educ.*, 2015 WL 5853778, at *3 (M.D. Ala. Oct. 6, 2015) (Thompson, J.) (quoting *Iqbal*, 556 U.S.at 672, 685).

defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct." *Id.* (quoting *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019)).

The Governor's actions invoke qualified immunity because she was "engaged in a 'discretionary function' when [she] performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). When assessing the discretionary nature of the Governor's action—here, her termination of Plaintiff—"[t]he question is essentially whether the actions 'are of a type that fell within [her] responsibilities.'" *Carruth*, 942 F.3d at 1054 (quoting *Holloman*, 370 F.3d at 1265). "The inquiry is two-fold: 'We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize.'" *Id.* (quoting *Holloman*, 370 F.3d at 1265). In essence, when "determining whether" the Governor "was engaged in a discretionary function for qualified immunity purposes," this Court must "look to the general nature of [her] action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266; *see also Wilcox v. Andalusia City Sch. Bd. of Educ.*, 660 F. Supp. 3d 1167, 1184 (M.D. Ala. 2023) (same). At this step, the court must not "equate[] the question of whether [a] defendant[] acted lawfully with the question of whether [she] acted within the scope of [her] discretion." *Sims v. Metropolitan Dade Cnty.*, 972 F.2d 1230, 1236 (11th Cir. 1992). Instead, to clear this low threshold, the Governor need only have acted "within"—or even "reasonably related to"—the "*outer perimeter*" of her discretionary duties. *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (emphasis added).

When she terminated Plaintiff, the Governor was engaging in a discretionary function within the scope of her supreme executive power and her constitutional obligation to take care that the laws of Alabama be faithfully executed. The bases and justifications for these powers are explained in full below, *infra* at 47-50, as they are more intertwined with the due process analysis, and those arguments in support of the existence of her discretionary authority to terminate an

obstructionist, non-constitutional executive officer are incorporated here. She "perform[ed] a legitimate job-related function," in removing Plaintiff, including for all reasons listed in her letter attached to the Complaint. *See Carruth*, 942 F.3d at 1054; Doc. 1-3 (listing all bases of Plaintiff's for-cause termination). By removing Plaintiff, the Governor sought to ensure cooperation among State agencies; cooperation between Alabama's State government and federal representatives; receipt and efficient administration of federal funds; intra-executive branch harmony, free from the filing of frivolous ethics complaints; a Board free of manipulation from the Commissioner; and trust that she and the Board could count on a Commissioner who would faithfully apply—rather than undermine—State veterans policy. *See* Doc. 1-3. And she did this "through means that were within [her] power to utilize" as holder of the supreme executive power in the State of Alabama. *Carruth*, 942 F.3d at 1054. At bottom, "the general nature of [her] action" falls within the scope of her constitutional powers as Governor. *See Holloman*, 370 F.3d at 1266

Because the Governor's actions trigger qualified immunity, Plaintiff carries the "burden … to show that qualified immunity is not appropriate." *Carruth*, 942 F.3d at 1054. He cannot. As explained above, *supra* at 31-35, Plaintiff has not shown the Governor violated his First Amendment rights. *See id.* That ends the analysis.

Regardless, Plaintiff certainly cannot satisfy the second element of his qualified immunity burden: that the Governor "violated a constitutional right that was clearly established at the time" she fired him. *Id.* (quoting *Taylor*, 920 F.3d at 732). It is incredibly difficult for a public-official plaintiff to overcome this element of qualified immunity in the context of a First-Amendment retaliation claim. "To establish that the defendant was on notice, the plaintiff must 'either produce a case in which speech materially similar to [hers] in all *Pickering–Connick* respects was held protected, ... or show that, on the facts of [her] case, no reasonable person could believe that both prongs of the [*Pickering-Connick*] test had not been met.'" *Maggio*, 211 F.3d at 1354–55 (citation omitted).[11] "Because no bright-line standard puts the reasonable public employer on notice of a

[11] The *Maggio* Court framed the "*Pickering–Connick* test" as follows: "(1) as a threshold matter, the speech must be fairly characterized as constituting speech on a matter of public concern;

constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Chesser*, 248 F.3d at 1124 (citation omitted).

Plaintiff cannot overcome that steep burden here. There is ***no case*** materially similar to Plaintiff's from the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the Alabama Supreme Court wherein the State's chief executive was held to violate the First-Amendment rights of a public-facing political appointee for allegedly terminating him for either (1) speech made directly pursuant to his official duties (the Ethics Complaint) or (2) disruptive speech criticizing state policy within his policy domain. *See Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019) ("We look only to binding precedent at the time of the challenged conduct—that is, 'the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state.'") (citation omitted). There is certainly no "existing precedent" that has "placed the ... constitutional question beyond debate." *Id.* (citation omitted). In fact, the existing case law conclusively demonstrates the legal invalidity of Plaintiff's claims. *Supra* at 31-35. At a minimum, that case law demonstrates the Governor's entitlement to qualified immunity.

Plaintiff cannot, in response, come to the Court with "some broad statements of principle in case law [that] are not tied to particularized facts." *Id.* (citation omitted). Standing alone, such general principles are insufficient to overcome qualified immunity. *Id.* At a minimum—as especially on the issues of whether Plaintiff was speaking as a private citizen on a matter of public concern and the *Pickering* balancing test—the Governor's arguments present this Court with a "close" question. *Hartwell*, 487 F. Supp. 2d at 1331 (applying qualified immunity because "the question of whether [plaintiff] spoke as a citizen on a matter of public concern was a close one for this court. Had the court gone the other way, [defendant's] retaliation would not have implicated

---

and (2) [plaintiff's] First Amendment interests in commenting on matters of public concern must outweigh the government's interests, as an employer, in promoting the efficiency of the public services it performs through its employees." 211 F.3d at 1351 (citations and quotations omitted).

[plaintiff's] constitutional right to free speech."). This is precisely the type of case that cries out for qualified immunity.

Nor can Plaintiff avoid the application of qualified immunity by simply invoking legal terms-of-art, like "willful" and "malicious," or summarily asserting that his termination was for "personal and vindictive reasons." Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–679. And a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 563 (2007)). The United States Supreme Court has "squarely rejected" pleadings that allege such "bare elements." *See O'Boyle v. Thrasher*, 638 F. App'x 873, 879 (11th Cir. 2016) (citing *Iqbal*, 556 U.S. at 686–87); *see also Ex parte Gilland*, 274 So. 3d 976, 985 n.3 (Ala. 2018) ("Although we are required to accept [the plaintiff's] *factual* allegations as true at this stage of the proceedings, we are not required to accept her *conclusory* allegations that [the defendant] acted willfully, maliciously, fraudulently, or in bad faith.").

Plaintiff's allegations do not past the post. There is no question that qualified immunity extends to the Governor's termination of Plaintiff. In the face of the clear application of qualified immunity, Plaintiff offers little more than a conclusory allegation that the Governor terminated him "for her own personal and vindictive reasons" and that her actions "were willful, malicious, illegal, fraudulent, in bad faith, beyond her authority, and/or at the very least under a mistake interpretation of the law."[12] *See* Doc. 1 ¶ 6. Rule 8 requires far more.

---

[12] Plaintiff makes passing reference to "fraudulent" activity in the Complaint. Although he spends no time explaining his theory of fraud and, indeed, appears to be simply including the term as part of a catchall used in his various claims, fraud must be pleaded with particularity, *see* FED. R. CIV. P. 9(b), and Plaintiff has not even attempted to satisfy that heightened pleading standard.

## II. Plaintiff's Procedural and Substantive Due Process Claim Fails as a Matter of Law (Count II).

Plaintiff's next federal claim against the Governor is for an alleged "Violation of Procedural and Substantive Due Process," as provided by the Fourteenth Amendment of the United States Constitution. Doc. 1 ¶¶ 65–75 (Count Two).[13] Assuming this Court "liberally construe[s] Plaintiff's Fourteenth Amendment claims as brought pursuant to [42 U.S.C.] § 1983," *Laster*, 2020 WL 9348259, at *3, his claim still fails. Procedural and substantive due process are different rights, which implicate different analyses. Accordingly, this Motion will first address the procedural due process component of Plaintiff's claim, followed by an analysis of substantive due process.

Plaintiffs' procedural due process claim fails for several reasons. As true for Plaintiff's First Amendment retaliation claim, his procedural due process claim fails for both merits and immunity reasons. On the merits, Plaintiff cannot state a claim for a procedural-due-process violation because he has no "life, liberty, or property" interest implicated by his termination from his position as ADVA Commissioner. *See* U.S. CONST. amend. XIV, § 1. State law—to which this Court must look when assessing Plaintiff's putative property interests—clearly establishes that public officials like Plaintiff have no property right in their positions. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985); *Birmingham v. Graffeo*, 551 So. 2d 357, 364 (Ala. 1989). Thus, the Due Process Clause does not even apply.

[13] By the face of his Complaint, Plaintiff brings his Due Process claim directly under the Fourteenth Amendment and not under 42 U.S.C. § 1983. *Compare* Doc. 1 ¶¶ 53–64 (Count One, First Amendment Claim, alleging "[t]his cause of action is brought under 42 U .S.C. § 1983 and § 1985 to redress the deprivation, under color of state law, of rights guaranteed by the First Amendment to the Constitution of the United States."), *with* Doc. 1 ¶¶ 65–75 (Count Two, Due Process Claim, failing to make a similar allegation). The Fourteenth Amendment, however, does not contain a freestanding cause of action. *E.g., Hearth, Inc. v. Dep't of Public Welfare*, 612 F.2d 981, 982 (5th Cir. 1980), *modified*, 617 F.2d 381 (5th Cir. 1980) (per curiam); *Laster v. Georgia*, 2020 WL 9348259, at *3 (M.D. Ga. July 1, 2020); *Am. Gen. Life & Acc. Ins. Co. v. Ward*, 509 F. Supp. 2d 1324, 1334–35 (N.D. Ga. 2007); *Strong v. Demopolis City Bd. of Ed.*, 515 F. Supp. 730, 732 (S.D. Ala. 1981). So "to the extent that Plaintiff alleges claims" against the Governor "directly under the Fourteenth Amendment, those claims must be dismissed because they fail to state claims for which relief can be granted." *Laster*, 2020 WL 9348259, at *3.

Assuming the Due Process Clause does apply to Plaintiff's termination, his Complaint applies an inapposite framework. For a claim asserting a violation of his *federal* constitutional right to due process, the question is not whether the Governor failed to follow specific *state* statutes. *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527–28 (11th Cir. 1987). Rather, the question is whether the Governor satisfied the *federal* due process clause's minimum requirements, such as notice and opportunity for a hearing. *Id.*; *Loudermill*, 470 U.S. at 538. Plaintiff's allegations and attached exhibits defeat this claim because he was, in fact, "afforded his procedural due process rights by the [Board] at the specially called meeting by [the Governor] on October 22, 2024." Doc. 1 ¶ 71; Doc. 1-3.

Further assuming Plaintiff can get past clear Eleventh Circuit precedent and tether his claim to the violation of a state statute, Plaintiff runs into a state constitutional issue. To the extent the Department's enabling statutes insulate the Commissioner from removal by the Governor, those statutes violate the Alabama Constitution's delegation of "the supreme executive power" to the Governor. *See* ALA. CONST. art. V, § 113. Plaintiff's claim thus cannot survive on the basis of that unconstitutional protection from the Governor's inherent authority to terminate other non-constitutional executive officers.

**A. Plaintiff's Procedural Due Process Claim Fails on the Merits.**

The merits analysis of Plaintiff's procedural due process claim involves two inquiries: (1) whether the Due Process Clause applies, and (2) if so, whether the Governor's actions went below the federal constitutional floor. The answer to question one is "no," ending the analysis. Nevertheless, and in case the Court disagrees, the answer to question two is also "no" for multiple reasons. No matter which avenue the Court opts to take, all roads lead to dismissal.

**1. The Due Process Clause Does Not Apply Because Plaintiff Lacks a Cognizable Property Interest.**

The Due Process Clause of the Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Plaintiff does not allege that the Governor deprived him of "life" or "liberty"; he only

claims the Governor violated his "property" interest in his position as Commissioner. Doc. 1 ¶ 68 ("at all material times Davis had a property interest in his position as [Department] Commissioner for a four-year term"). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538. Plaintiff appears to agree that his property right (if it exists) stems from Alabama "law," specifically the statute creating his position: Alabama Code § 31-5-6 (effective October 1, 2024 to March 17, 2025). *See* Doc. 1 ¶ 68.

Although Plaintiff correctly identifies the putative source of his property right (State law), he draws the wrong conclusion. "Although some courts have referred to a public office as a species of property," under Alabama law, "the decisions generally are … that no one has any private right of property in such office." *Graffeo*, 551 So. 2d at 363. Indeed, the Alabama Supreme Court "has continually held that 'a public office which the legislature creates is not the *property* of the office holder within the constitutional provision against depriving a man of property, nor does it *ever* become a *vested right* as against the right of the state to remove him.'" *Id.* at 364 (quoting *Moore v. Watson*, 429 So.2d 1036 (Ala.1983)) (emphasis in *Graffeo*) ; *see also Simpson v. Van Ryzin,* 265 So.2d 569 (Ala. 1972); *Heck v. Hall,* 190 So. 280 (Ala. 1939). The Alabama Legislature "established" the Board, the Department, and his office as Commissioner. ALA. CODE § 31-5-2 ("The State Board of Veterans Affairs is established to oversee the State Department of Veterans Affairs. The department shall be composed of a commissioner and other officers and employees authorized to be appointed under this chapter who meet the qualifications prescribed by the commissioner."). As a legislatively created public office, Plaintiff's appointment to the Commissioner position "is not," under Alabama substantive law, his "property" as "office holder." *Graffeo*, 551 So. 2d at 364. No property interest, no due process claim.

**2. The Governor Satisfied the Constitutional Minimums of Due Process.**

Even if the Due Process Clause applies, the Governor satisfied the clause's minimum requirements when removing Plaintiff. Plaintiff's Complaint mistakenly frames the analysis. His due process rights under the *federal* constitution do not hinge on whether the Governor did or did

not comply with a *state* statute. *Harris*, 817 F.2d at 1527–28. Instead, the question is whether Plaintiff received "notice and opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542. Those statutes notwithstanding, the Governor had constitutional authority to remove Plaintiff which superseded the statutory structure he alleges insulated him from her removal. So to the extent Plaintiff even can tie his federal due process claim to the Governor's alleged violation of a state statute, the state statute at issue cannot be enforced against Governor Ivey because it infringes upon her constitutional "supreme executive power." *See* ALA. CONST. art. V, § 113.

**a. State Statutes Do Not Define the Contours of Plaintiff's Federal Due Process Rights.**

The crux of Plaintiff's procedural-due-process theory is that the Governor violated his rights because, under the then-applicable statutes, he "could only be terminated by the [Board] and only for cause." Doc. 1 ¶ 68 (citing ALA. CODE § 31-5-6). This theory is insufficient to state a claim as a matter of well-established Eleventh Circuit law.

The Eleventh Circuit has "emphasize[d] that the violation of a state statute outlining procedure," like the one in Alabama Code § 31-5-6(a), "does not necessarily equate to a due process violation under the federal constitution." *Harris*, 817 F.2d at 1528. Rather, the question is whether the defendant supplied "the minimal federal constitutional process due to the plaintiff." *Id.* If the answer to that question is "yes," then the violations of the State procedural statute are irrelevant—at least as to a federal procedural due process claim. *Id.* That is because "[e]ven if the" facts as pleaded are "insufficient to satisfy the state statute" at issue, "the state statute does not define the process due under the federal Constitution." *See id.* at 1527.

Plaintiff "must show not just a violation of a state statute, but a constitutional violation in [his] section 1983 action." *Id.* The practical underpinnings of this rule are obvious. Were a plaintiff able to automatically equate a violation of a state statute with a deprivation of federal constitutional due process, "federal courts would have the task of insuring strict compliance with state procedural regulations and statutes." *Id.* at 1528. This Court is not in that business, not just as a matter of the

enormous practical burden such a rule would impose on federal courts, but because of strong constitutional principles of federalism. It is well established that federal courts are powerless under the Eleventh Amendment to compel state officials to comply with state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). Put simply, a plaintiff cannot use a state statute to raise the floor of process due under the United States Constitution.

Plaintiff's procedural due process claim is tightly anchored to his allegation that the Governor "violated [his] . . . rights of due process to only be terminated by the [Board] for cause" pursuant to Section 31-5-6 of the Alabama Code. Doc. 1 ¶ 68; *see also* Doc. 1 ¶ 73 (alleging the Governor "was not legally afforded the discretion," under the Department statutes, "and was in fact prohibited by law from firing" Plaintiff). Davis makes no allegation that he was deprived of classic federal due process requirements, such as notice or an opportunity for a hearing. *See generally* Doc. 1. Indeed, ***he alleges the opposite***. See Doc. 1 ¶ 71 (alleging "Davis was finally afforded his procedural due process rights by the [State Board of Veterans Affairs] at the specially called meeting by" the Governor). Isolating the variable, it is only the purported violation of § 31-5-6 that supports his procedural due process claim—not any allegation that the Governor acted below her minimal requirements under the Fourteenth Amendment's Due Process Clause to provide notice and opportunity for a hearing. This is exactly the type of theory the Eleventh Circuit has deemed insufficient to support a federal due process claim. *See Harris*, 817 F.2d at 1527–28.

To the extent the Governor's alleged violation of Alabama Code § 31-5-6(a) gives rise to any claim, it is certainly not one for a violation of federal due process rights. The procedural due process claim can be dismissed on that basis.

#### b. The Governor Supplied Plaintiff with the Constitutional Minimum Due-Process Requirements.

Because Plaintiff's claims are governed by the Due Process Clause's procedural minimums, and "not just a violation of a state statute," Plaintiff must plead and prove a

"constitutional violation." *Harris*, 817 F.2d at 1527. Even though he has not attempted to allege a due process violation (other than his insufficient state-statute-violation argument), the Governor *did* supply Plaintiff with sufficient due process.

"Once it is determined that the Due Process Clause applies, the question remains what process is due." *Loudermill*, 470 U.S. at 541. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* Here, based on Plaintiff's own allegations and attachments to his Complaint, he received both sufficient notice and an opportunity for a hearing.

The Court need look no further than the Complaint to know this is true. Plaintiff flat-out admits that he was "afforded his procedural due process rights" at a meeting "specially called" by the Governor on October 22, 2024—a meeting that preceded his termination. Doc. 1 ¶¶ 71 & 72. Before that "opportunity for a hearing," the Governor sent Plaintiff "notice" by letter on October 18, 2024, "informing him" that she would be calling a meeting of the State Board of Veterans Affairs "to consider his immediate removal as Commissioner." *See Loudermill*, 470 U.S. at 541; Doc. 1 ¶ 44. That letter, attached to Plaintiff's Complaint as Exhibit C, supplied Plaintiff with the information for the time, place, and topics of the State Board meeting called to assess his continued service as Commissioner. Doc. 1-3. Moreover, the letter listed seven bases for Plaintiff's termination "for cause":

- "General lack of cooperation" with other executive branch agencies, legislators, federal representatives, and the Governor's Office, in violation of state statute and executive order;
- "Mishandling of the ARPA grant program," which "jeopardized the State's ability to fulfill its [federal law] obligations";
- "Filing a frivolous ethics complaint" against an ADMH Commissioner;
- "Breach of agreement" by Plaintiff to resign his position;

- "Manipulation of the [Board] . . . by placing extreme pressure on some [Board members] to do and say things that went against [their] beliefs and the very principles on which [the Board] should stand";
- "[F]ailure to … 'reaffirm, in writing'" his prior commitment to resign; and
- The Governor's, the Board Vice Chair's, and legislative leaders' "general loss of trust and confidence" in Plaintiff.

Doc. 1-3. The Governor explicitly invited Plaintiff "to respond to the concerns … expressed in this letter," before the special meeting of the State Board. Plaintiff cannot plausibly claim that he was not "on notice" of the accusations that ultimately led to his termination.

And Plaintiff indeed had his opportunity for a hearing. Although Plaintiff's Complaint is tactically silent as to the mechanics of that hearing, the only allegation he made about it was that the "specially called meeting" by the Governor "afforded" him "his procedural due process rights." That allegation is self-defeating. His claim fails on its own terms.

**c. The Governor Had the Supreme Executive Power to Remove Plaintiff.**

Assuming the Court rejects all of the Governor's other bases for dismissal of the procedural due process claim and determines that the Governor's failure to abide by Alabama Code § 31-5-6(a) created a federal due process issue, Plaintiff's claim still fails because the Department statute gives way to the Governor's "supreme executive power."[14] This supreme executive power is

[14] It is worth reiterating that the Court need not reach this novel issue of State constitutional law. To get to this question, the Court must determine that Plaintiff has (1) adequately pleaded a claim for a due process violation under 28 U.S.C. § 1983 (not merely the federal constitution itself); (2) identified a property interest under state law, thus triggering the protections of the due process clause; (3) adequately pleaded a federal constitutional violation of due process, not a mere violation of a state procedural statute; ***and*** (4) shown how the Governor's actions failed to satisfy the federal constitutional minimum guarantee of due process. Even then, this Court still need not answer that question, should this Court think that issue is unsettled under Alabama law. In that instance, the Court should certify that question to the Alabama Supreme Court, which is the proper forum to resolve this critical state-law question. *See In re Cassell*, 688 F.3d 1291, 1300 (11th Cir. 2012) ("When there is substantial doubt about the correct answer to a dispositive question of state law, a better option is to certify the question to the state supreme court."); *Gov't Emps. Ins. Co. v.*

vested in the Governor by the State Constitution, includes the power to terminate other non-constitutional executive officers, and cannot be overridden by statute.

The Governor's authority to terminate Plaintiff regardless of what a mere statute says derives from two State constitutional provisions: (1) the "Vesting Clause" and (2) the "Take Care Clause." The Vesting Clause provides, "[t]he supreme executive power of this state shall be vested in a chief magistrate, who shall be styled 'The Governor of Alabama.'" ALA. CONST. art. V, § 113. The Take Care clause, in turn, provides "[t]he Governor shall take care that the laws be faithfully executed." ALA. CONST. art. V, § 120. The Alabama Supreme Court has observed that if the State "constitution's grant of supreme executive authority to the governor and its charge that the governor 'take care that the laws be faithfully executed' mean anything in relation to a matter for which another constitutional officer is also given responsibility, they at least mean as follows: when the governor determines that, whether due to inaction or inadequate action by the other official, it is necessary for him to act lest the law go unenforced, he may act." *Riley v. Cornerstone Community Outreach, Inc.*, 57 So. 3d 704, 722 (Ala. 2010). Notably, here, Plaintiff is not even a constitutional officer; his position is wholly a creature of state statute. *See* ALA. CODE § 31-5-6 (effective October 1, 2024 to March 17, 2025).

Given the dearth of Alabama case law on the issue, the conclusion that the supreme executive power contains the power to terminate non-constitutional executive officials is derived from stacking first-principle on first-principle. There is almost no power more critical to an executive than the ability to terminate subordinates within the executive branch. Going back to the beginning of our republic, "if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." 1 ANNALS OF CONG. 463 (1789) (J. Madison). Absent the ability to remove obstinate subordinates in the executive branch, obstructionist public officials could, in practice, prevent the Governor from faithfully executing

*Glassco Inc.*, 85 F.4th 1136, 1147 (11th Cir. 2023) (same); *Tyne v. Time Warner Entm't Co.*, 336 F.3d 1286, 1291 (11th Cir. 2003) ("Substantial doubt about a question of a state law upon which a particular case turns should be resolved by certifying the question to the state supreme court."); *Jones v. Dillard's, Inc.*, 331 F.3d 1259 (11th Cir. 2003) (same).

the State's laws. *See* ALA. CONST. art. V, § 120. Moreover, "[w]hen a Constitution gives a general power," such as the supreme executive power or the power to take care that the laws be faithfully executed, "it also gives, by implication, every particular power necessary for the exercise of the one, or the performance of the other." *See Riley*, 57 So. 3d at 722 (citation omitted). Thus, when a subordinate executive agency official stands in the way of the Governor's ability to ensure that the laws, such as the Department of Veterans Affairs statutes, are faithfully executed, the Governor may "act" to remove the impeding official. *See Riley*, 57 So. 3d at 722.

There is no doubt that Plaintiff occupied a subordinate executive office, created not by the State constitution, but by statute. See ALA. CODE § 31-5-6 (effective October 1, 2024 to March 17, 2025). And because the Governor's supreme executive power and take-care duty are constitutional, they cannot be overridden by legislative insulation, such as the statutory shield behind which Plaintiff hides. *See Riley*, 57 So. 3d at 722 ("[T]he aforesaid authority to act derives from the constitution itself, not from any statutory grant of authority by the legislature. That is, it is authority that exists even in the absence of a specific grant of authority by the legislature."). "The Constitution of Alabama, like that of the nation and of the other states, is the supreme law within the realm and sphere of its authority." *Johnson v. Craft*, 87 So. 375, 380 (Ala. 1921). Its "control is absolute wherever and to whatever its provisions apply." *Id.* "It commits to no body, officer, or agent any authority or power whatever to change or modify or suspend the effect or operation of its mandates or its prohibitions." *Id.* "Stated more succinctly, '[t]he constitution of this state is the supreme law and limits the power of the legislature.'" *Renter's Realty v. Smith*, 322 So. 3d 1060, 1064 (Ala. Civ. App. 2020) (quoting *Alexander v. State*, 150 So. 2d 204 (Ala. 1963)). Because Plaintiff alleges that the then-applicable statute seeks to limit the Governor's supreme executive authority, it must yield to her constitutional prerogatives.

This interpretation is in line with established federal doctrine concerning the President's ability to remove unelected members of the executive branch. The federal constitution, like Alabama's, has a Vesting and Take Care Clause that puts those powers in the hands of a chief executive. U.S. CONST. art. I, §§ 1, 3; *cf. Rice v. Alabama Surface Min. Comm'n*, 555 So. 2d 1079,

1081 (Ala. Civ. App. 1989) ("federal case law construing federal statutes upon which Alabama statutes were patterned will be given great weight as persuasive authority in determining construction of a state statute."). Through those clauses, "the Constitution gives the President the authority to remove those who assist him in carrying out his duties. Without such power, the President could not be held fully accountable for discharging his own responsibilities." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). "The view that prevailed, as most consonant to the text of the Constitution and to the requisite responsibility and harmony in the Executive Department, was that the executive power included a power to oversee executive officers through removal." *Id.* at 214.

In recent years, and "[i]n the face of that novel impediment to the President's oversight of the Executive Branch," the United States Supreme Court has "adhered to the general rule that the President possesses the authority to remove those who assist him in carrying out his duties." *Id.* at 215. The federal "Constitution prohibits even modest restrictions on the President's power to remove the head of an agency with a single top officer." *Collins v. Yellen*, 594 U.S. 220, 256 (2021). Indeed, the Supreme Court has recognized that "[t]he President must be able to remove not just officers who disobey his commands but also those he finds negligent and inefficient, those who exercise their discretion in a way that is not intelligent or wise, those who have different views of policy, those who come from a competing political party who is dead set against the President's agenda, and those in whom he has simply lost confidence." *Id.*

Those same interests apply here, and indeed were echoed by the Governor in her letter prior to and after terminating Plaintiff. *See, e.g.*, Doc. 1-3. As Alabama Courts often do, this Court should import that federal interpretation here. *See, e.g.*, *King v. State*, 674 So. 2d 1381, 1384 (Ala. Crim. App. 1995) (citing *Pickett v. Matthews,* 192 So. 261 (Ala. 1939)) ("The construction given by the United States Supreme Court to provisions of the United States Constitution is persuasive in construing similar provisions of the Alabama Constitution.").

### B. Plaintiff's Substantive Due Process Claim Fails on the Merits.

Plaintiff also asserts a "substantive" due process claim against the Governor under § 1983. Doc. 1 ¶¶ 65–73 ("Count Two: Violation of Procedural and Substantive Due Process"). "To state a substantive-due-process claim under § 1983," Plaintiff "must allege '(1) a deprivation of a constitutionally protected interest," and "(2) that the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation.'" *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1239 (11th Cir. 2025) (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016)). Plaintiff has not alleged—nor could he allege—any facts giving rise to a substantive due process claim.

Plaintiff's claim does not get past the first element because he has not alleged a constitutionally protected interest. Because "[p]roperty interests are not created by the Constitution" and "are created and . . . defined by existing rules or understandings that stem from an independent source such as state law," this Court must look to Alabama law to assess Plaintiff's property interests in his role as Commissioner. *See Loudermill*, 470 U.S. 532, 538 (1985) .

Alabama law is clear: Plaintiff had no property right—constitutional or otherwise—to his position as Commissioner. As discussed above, under Alabama law, "a public office which the legislature creates is not the property of the office holder within the constitutional provision against depriving a man of property, nor does it ever become a vested right as against the right of the state to remove him." *Graffeo*, 551 So. 2d at 364 (citation omitted) . The analysis above concerning Plaintiff's lack of a State-law interest in his office is incorporated here.

Even assuming the Governor's interpretation of Alabama substantive law is incorrect and Plaintiff did have a property right to his position as Commissioner, "[United States] Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the *procedural* component of the Due Process Clause, not its substantive component." *McKinney,* 20 F.3d at 1560 (emphasis added). So "[b]ecause employment rights are state-created rights and are not 'fundamental' rights created by the Constitution," any interest Plaintiff had in his role as Commissioner does "not enjoy substantive due process protection." *Id.*

The analysis of the second element of a substantive due process claim differs depending on whether the alleged violation came from executive or legislative action. *Littlejohn*, 132 F.4th at 1239 (citing *McKinney*, 20 F.3d at 1557 n.9). Because Plaintiff has sued the Governor, Doc. 1 ¶ 66, the "'[e]xecutive' action" framework applies. *See Id.* For such claims, the plaintiff must allege facts (and ultimately prove) that the government's conduct "shocks the conscience." *Littlejohn*, 132 F.4th at 1240–41. The plaintiff must satisfy this pleading and proof standard even when he invokes the violation of a fundamental right. *Littlejohn*, 132 F.4th at 1240-41.

Plaintiff has not even attempted to plead that the Governor's actions "shock the conscience." *See generally* Doc. 1; *Littlejohn*, 132 F.4th at 1240–41. That phrase appears nowhere in his Complaint. *See generally* Doc. 1. But in any event, Davis cannot plead any facts that the Governor's actions shock the conscience because, as explained above, her actions were lawful.

**C. The Governor Is Entitled to Sovereign Immunity for Claims Brought Against Her in Her Official Capacity for Money Damages.**

Plaintiff brings his Fourteenth Amendment claim against the Governor "in [] her … official capacity," seeking various forms of money damages. Doc. 1 ¶¶ 66 & 75(B), (C), (D), (E), (G), (H), and (I). To this extent, his claim is barred by Alabama's State sovereign immunity. The arguments for the applicability of State sovereign immunity for Count Two are identical to those made in support of the motion to dismiss Count One. *See supra* at 35-36. Those arguments are fully incorporated here.

**D. The Governor Is Entitled to Qualified Immunity to the Extent Plaintiff Seeks Monetary Relief Against Her in Her Individual Capacity.**

Plaintiff also asserts his Fourteenth Amendment claim against the Governor in her individual capacity. Doc. 1 ¶ 66. To the extent he seeks relief against her, the Governor is entitled to qualified immunity.

As discussed above, to "receive" the protections of "qualified immunity," the Governor "must first prove that [she] was acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." *Carruth*, 942 F.3d at 1054 (citation omitted). If she "makes this

showing, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (citation and quotation omitted). "To defeat qualified immunity," Plaintiff must establish that "(1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct." *Id.* (quoting *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019).

As explained above, the Governor's actions invoke qualified immunity because she was "engaged in a 'discretionary function' when [she] performed the acts of which the plaintiff complains." *Holloman*, 370 F.3d at 1264. When she terminated Plaintiff, the Governor was engaging in a discretionary function within the scope of her supreme executive power and her constitutional obligation to take care that the laws of Alabama be faithfully executed. The arguments about why that qualifies as a discretionary function are reasserted here.

Because the Governor's actions trigger qualified immunity, Plaintiff carries the "burden … to show that qualified immunity is not appropriate." *Carruth*, 942 F.3d at 1054. He cannot. As described above, *supra* at 41-52, Plaintiff has not shown a federal due process violation. *See id.*[15] That ends the analysis.

Regardless, Plaintiff certainly cannot satisfy the second element of his qualified immunity burden: that the Governor "violated a constitutional right that was clearly established at the time" she fired him. *Id.* (quoting *Taylor*, 920 F.3d at 732). This is so for two reasons. First, to the extent *Graffeo* (no property right in a public office) and *Harris* (plaintiff must show a due process violation, not state statute violation) do not completely defeat Plaintiff's procedural due process claim, they certainly did not provide the Governor with "reasonable" notice that a potential violation of a state statue regarding termination of a public official—without more—equated to a

[15] With respect to the substantive due process component of Count Two, the Eleventh Circuit has repeatedly and "expressly held that 'an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component." *Carruth*, 942 F.3d at 1059 (quoting *McKinney*, 20 F.3d at 1560). "So to the extent that" Plaintiff "asserts a substantive due process claim based on the deprivation of his right to" his position as Commissioner, "controlling precedent holds that it must fail." *Id.*

federal due process violation. *See Foulke*, 2024 WL 2761778, at *5; *Graffeo*, 551 So. 2d at 363; *Harris*, 817 F.2d at 1528.

Second, the Governor's use of her supreme executive power to terminate Plaintiff—while permissible—is, at worst, an open question. The courts have not definitively settled the question whether the Governor has the ability to terminate subordinate executive officials pursuant to her constitutional powers, statutory protections to those officials notwithstanding. "If the question is one of first impression," the Governor is "almost certainly entitled to qualified immunity, since there is rarely a clearly established violation of law in the absence of supporting case law." *Carruth v* 942 F.3d at 1059. There is ***no case*** materially similar to Plaintiff's from the United States Supreme Court, Eleventh Circuit Court of Appeals, or the Alabama Supreme Court wherein the Governor was held to violate the federal due process rights of holder of a legislatively-created executive office merely because the Governor allegedly did not comply with a statutory removal procedure. *See Echols*, 913 F.3d at 1324. There is certainly no "existing precedent" that has "placed the . . . constitutional question beyond debate." *Id.* (citation omitted).

Plaintiff's conclusory allegation that his "rights of due process to only be terminated by the [Board] and only for cause" were "clearly established" is simply not enough. Doc. 1 ¶ 68. Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679. And a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 563 (2007)). The United States Supreme Court has "squarely rejected" pleadings that allege such "bare elements." *See O'Boyle*, 638 F. App'x at 879 (citing *Ashcroft*, 556 U.S. at 686–87). And Plaintiff cannot, in response, come to the Court with "some broad statements of principle in case law [that] are not tied to particularized facts." *Id.* (citation omitted). Standing alone, such general principles are insufficient to overcome qualified immunity. *Id.* At a minimum—especially on the novel issue of whether the Governor has the supreme executive power to terminate non-constitutional executive officers—the Governor's arguments

present this Court with a "close" question. *Hartwell*, 487 F. Supp. 2d at 1331. In such circumstances, qualified immunity is appropriate.

* * *

"The qualified immunity defense" works to "giv[e] a government agent the benefit of the doubt, provided that the conduct was not so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed the acts." *King v. Pridmore*, 961 F.3d 1135, 1145 (11th Cir. 2020), *cert. denied sub nom. King, Trinell v. Pridmore, Ricky, et al.*, No. 20-877, 141 S.Ct. 2512 (U.S. Apr. 19, 2021). Given the various complicated factors under State law, Plaintiff has not established that the Governor's removal of him was "so obviously illegal" as to skirt her qualified-immunity protections. *See id.* The defense thus defeats his claim.

## III. Plaintiff is Not Entitled to Injunctive Relief on Either of His Federal Claims (Counts I and II).

Although his failure to state a cognizable claim for a violation of either the First Amendment or the Fourteenth Amendment is a sufficient basis to deny all injunctive relief Plaintiff requests for his federal claims, there are several other independent reasons the Court should deny Plaintiff's request for injunctive relief.[16]

### A. Plaintiff Pleads Himself Out of the Application of the *Ex parte Young* Exception.

Under his own theory of the case, Plaintiff is not entitled the exception to Eleventh Amendment immunity found in *Ex parte Young*, 209 U.S. 123 (1908). "The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity." *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490,

[16] The Governor's substantive arguments above regarding Plaintiff's First Amendment and Fourteenth Amendment Due Process clause claims are incorporated here as additional bases to defeat his claim for injunctive relief.

1502 (11th Cir. 1995) (citation omitted). As explained above, such immunity applies here. Pursuant to *Ex parte Young* and its progeny, however, a narrow exception to Eleventh Amendment immunity exists where a plaintiff "alleg[es] a violation of the federal constitution against a state official in [her] official capacity for injunctive relief on a prospective basis." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). This exception does not permit a plaintiff "to adjudicate the legality of past conduct;" thus, a plaintiff must allege "an ongoing and continuous violation of federal law." *Summit Med. Assocs. v. Pryor*, 180 F.3d 1326, 1337, 1338 (11th Cir. 1999). And because the *Ex parte Young* exception cannot "operate as an exception to … sovereign immunity where no defendant has any connection to the enforcement of the challenged law at issue," the "state officer [named as a defendant in her official capacity must have] the authority to enforce an unconstitutional act in the name of the state." *Id.* at 1341.

Plaintiff pleads himself out of the applicability of this exception. For both of his federal-law claims, Plaintiff requests an injunction to reinstate him to his position as Commissioner. Doc. 1 ¶¶ 64(A) & 75(A). But, as is made clear throughout the Complaint, Plaintiff alleges that the Governor does not have the authority to hire or fire him. *See*, *e.g.*, Doc. 1 ¶ 8 ("As a matter of law, [Plaintiff] was not appointed nor hired by [the Governor] and did not serve at [the Governor's] pleasure."); *id.*, ¶ 35 ("Alabama law is clear that [the Governor] did not have the authority or discretion to terminate [Plaintiff] or require his resignation."); *id.*, ¶ 49; *id.*, ¶ 51. More than failing to plead that the Governor is able to fulfill the injunctive remedy he requests, as he is required to do, *see Summit Med. Assocs.*, 180 F.3d at 1341, Plaintiff has done the opposite: he has alleged that the Governor lacks the power to reinstate him.

Alternative pleading does not save Plaintiff here. Indeed, for the Governor to have the inherent power to reinstate Plaintiff, she would also have to have the inherent power to remove him in the first place. Agreeing that the Governor enjoys that inherent power effectively dooms all of Plaintiff's claims with the possible exception of his First Amendment Claim (which fails for a host of independent reasons anyway). Accordingly, Plaintiff has pleaded himself out of an entitlement to an injunction for his reinstatement.

### B. Plaintiff's Alleged Ongoing Harm Has Been Mooted by a Subsequent Change in Law.

In addition, although the Governor denies that her termination of Plaintiff ever violated the Due Process Clause, Plaintiff cannot maintain that such an alleged constitutional violation is ongoing to the extent his theory relies on an alleged violation of Alabama Code § 31-5-6. *See* Doc. 1 ¶ 72. As noted above, for the *Ex parte Young* exception to apply, a plaintiff must allege "an ongoing and continuous violation of federal law." *Summit Med. Assocs.*, 180 F.3d at 1338. In his due process claim, Plaintiff asserts that the Governor's termination of Plaintiff violated "§31-5-6 and deprived Davis of his clearly established right to substantive due process in violation of the 14th Amendment of the United States Constitution." Doc. 1 ¶ 72. But since the Governor terminated Plaintiff, the Alabama Legislature has amended that statute. Pursuant to the current version of Alabama Code § 31-5-6, effective as of March 17, 2025, "[t]he Governor shall appoint a commissioner to serve at the Governor's pleasure." So to the extent Plaintiff asserts that the Governor ever violated State law in terminating him, he cannot assert that that violation is ongoing, precluding application of *Ex parte Young*.

## IV. Plaintiff is Not Entitled to Declaratory Judgment/Injunctive Relief (Count III).

### A. Plaintiff's Request for Declaratory Relief Does Not Supply Original Jurisdiction for This Court.

Plaintiff's request for declaratory relief does not supply an independent basis for federal jurisdiction. It is axiomatic that "a request for declaratory relief 'cannot alone supply jurisdiction otherwise absent.'" *Banks v. Sec'y, Dep't of Health & Hum. Servs.*, 38 F.4th 86, 93 (11th Cir. 2022) (quoting *California v. Texas*, 593 U.S. 659, 673 (2021)). "[T]herefore, 'a suit brought under the [Declaratory Judgment] Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question.'" *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1273 (11th Cir. 2020) (quoting *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989)). Plaintiff explicitly asks this Court to resolve a pure state-law question. *See* Doc. 1 ¶ 78 ("On the one hand Davis claims that pursuant to Code of Alabama § 31-5-6, he could only

be terminated by the [Board] for cause which the [Board] A voted not to do. On the other hand, [the Governor] claims that she had the 'supreme executive power' to disregard the law and [Plaintiff's] constitutional rights and to terminate [Plaintiff].").[17] That Plaintiff's declaratory relief claim is one grounded strictly in state law underscores the lack of jurisdictional hook and, as explained below, underscores why this Court should refrain from exercising supplemental jurisdiction.

### B. A Declaratory Judgment is an Improper Vehicle for Plaintiff's Reinstatement.

To the extent Plaintiff seeks a declaratory judgment pursuant to state law for his reinstatement as Commissioner, he has failed to state a claim. "[T]he exclusive remedy to determine whether a party is usurping a public office is a quo warranto action pursuant to § 6-6-591, Ala. Code 1975, and not an action seeking a declaratory judgment." *Hudson v. Ivey*, 383 So. 3d 636, 641 (Ala. 2023). Here, the Governor has already appointed a new Commissioner and, to the extent Plaintiff seeks reinstatement, he is arguing that he, rather than the incumbent Commissioner, should hold that position. But that is a textbook example of a claim that must be brought as a quo warranto action rather than a declaratory judgment action. Accordingly, Plaintiff's declaratory judgment action to reinstate him as Commissioner pursuant to state law must be dismissed.

---

[17] In passing, Plaintiff asks the Court to declare that the Governor's termination of Plaintiff violated Plaintiff's "protected constitutional rights and Alabama law." Doc. 1 at 20. Plaintiff does not identify which constitutional rights he believes the Governor violated nor, indeed, whether he is referring to the Alabama State Constitution or the United States Constitution. Assuming that Plaintiff eventually asserts that he meant to refer to the United States Constitution, he still has not identified which federal constitutional rights upon which he seeks a declaration. Again assuming that Plaintiff eventually asserts that his reference to "constitutional rights" is a rehash of his First Amendment and Fourteenth Amendment claims, his request for declaratory relief should be denied for the same reasons those independent claims should be dismissed.

### C. Governors of the State of Alabama Possess the Authority to Terminate the Commissioner.

As explained above, Governors of the State of Alabama enjoy the constitutional authority to terminate subordinate, non-constitutional executive officials. *Supra* at 47-50. Because Alabama's Constitution cannot be amended by statute, the statute cited by Plaintiff, Alabama Code § 31-5-6, cannot circumscribe the authority vested in the Governor by the State Constitution. *See Riley*, 57 So. 3d at 722. Plaintiff's request for declaratory relief should accordingly be denied.

### D. Plaintiff May Not Seek Damages Via His Declaratory Judgment Claim.

Plaintiff may not use his declaratory judgment claim as a backdoor method of obtaining monetary relief from the State. "[T]he Eleventh Amendment bars nominally equitable claims when the relief in essence requires the State to expend money to compensate for past action." *Green v. Graham*, 476 F. Supp. 3d 1182, 1194 (M.D. Ala. 2020) (citation omitted). Thus, "[i]f the prospective relief sought is the functional equivalent of money damages, … *i.e.*, [i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty, *Ex parte Young* does not apply." *Summit Med. Assocs.*, 180 F.3d at 1337 (internal quotation marks and citation omitted). The same is true under Alabama law. *See Latham*, 927 So. 2d at 821 ("In general, the State is immune from any lawsuit that would … result in the plaintiff's recovery of money from the State.").

Plaintiff's declaratory judgment claim seeks in part relief that is barred by the Eleventh Amendment and state immunity under Alabama law. Plaintiff explicitly brings the declaratory judgment claim against the Governor in her official capacity. Doc 1 ¶ 77. In addition, he seeks "all financial benefits … which he would have received but for [the Governor's] wrongful termination." Doc. 1 ¶ 79(D). Although framed as injunctive relief, Plaintiff seeks payment from the State treasury based on alleged past wrongful behavior—relief that is barred by federal and Alabama law.

### E. Because He Suffers No Ongoing Harm, Plaintiff May Not Receive Injunctive Relief to Reinstate Him as Commissioner.

Plaintiff may not receive injunctive relief that restores him to his position as Commissioner. To obtain injunctive relief against a State official in her official capacity, a plaintiff must allege "an ongoing and continuous violation of federal law." *Summit Med. Assocs.*, 180 F.3d at 1338. In his declaratory judgment claim, Plaintiff seeks injunctive relief to be restored as Commissioner based on the alleged illegality of the Governor's termination of him. *See* Doc. 1 ¶ 79(C). Plaintiff disagrees that the Governor possesses the inherent authority to terminate him, arguing instead that "he could only be terminated by the [Board] for cause." Doc. 1 ¶ 78. But Plaintiff cannot disagree that, independent of her inherent authority, she now possesses the authority to terminate any Commissioner today. Since the Governor terminated Plaintiff, the Legislature has amended the Board/Department statute, clarifying that "[t]he Governor shall appoint a commissioner to serve at the Governor's pleasure." ALA. CODE § 31-5-6(a) (effective March 17, 2025). Thus, to the extent Plaintiff asserts that the Governor ever violated State law in terminating him, he cannot assert that that violation is ongoing, precluding to application of *Ex parte Young* and any entitlement to injunction reinstating him as Commissioner.

The same is true even if Plaintiff relies on the exception to state immunity under Alabama law for "actions brought under the Declaratory Judgments Act … seeking construction of a statute and its application in a given situation." *See Ex parte Moulton*, 116 So. 3d 1119, 1131 (Ala. 2013) (internal citation omitted). Again, Plaintiff's theory that the Governor wrongfully terminated him relies upon a version of § 31-5-6 that is no longer in force. Thus, even if this Court found that the Governor could not terminate Plaintiff pursuant to the version of § 31-5-6 in effect at the time of the underlying termination, which it should not, such a decision would have no bearing on the current state of the law, which explicitly states that the Commissioner serves as the pleasure of the Governor. *See* ALA. CODE § 31-5-6(a).

## V. This Court Should Decline Supplemental Jurisdiction Over the State-Law Claims (Counts IV–VIII).

Because this Court should dismiss all of Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over any remaining state-law claims. "[T]he usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir.2004); *see also Busse v. Lee Cnty., Fla.*, 317 F. App'x 968, 974 (11th Cir. 2009) ("we expressly encourage district courts to [dismiss any remaining state-law claims] when all federal claims have been dismissed pretrial"); *Pearson v. Com. Bank of Ozark*, 2015 WL 5125626, at *9 (M.D. Ala. Aug. 31, 2015) (Thompson, J.) (declining to exercise supplemental jurisdiction over state-law claims after dismissing federal-law claims); *Sealey v. Stidham*, 2015 WL 5083998, at *9 (M.D. Ala. Aug. 27, 2015) (Thompson, J.) (same); *Couch v. Montgomery City Police Dep't*, 2013 WL 6096362, at *5 (M.D. Ala. Nov. 20, 2013) (Thompson, J.) (same). That is particularly true where, as here, "the federal-law claims have dropped out of the lawsuit in its early stages." *Carnegie-Mellon Univ.*, 484 U.S. at 350.

All factors weigh in favor of dismissing any remaining state-law claims without prejudice to be refiled in state court. Most obviously, comity principles strongly favor sending this action to state court where it belongs. "State courts, not federal courts, are the final expositors of state law." *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Plaintiff's state-law claims implicate not just state statutory and common law but the scope of the supreme executive power of the Governor under the Alabama Constitution. It is difficult to imagine a more quintessential state-law query

than a governor's inherent power pursuant to her state's constitution. For that reason, comity strongly favors declining supplemental jurisdiction and permitting state courts to determine these inherently state-law questions.

Judicial economy likewise favors this Court declining supplemental jurisdiction. As noted above, this litigation is in its earliest stages. No discovery has occurred and relatively few judicial resources have been expended. That posture favors dismissal of any remaining state-law claims. *See Carnegie-Mellon Univ.*, 484 U.S. at 350.

Proceeding in state court will also conserve judicial resources likely to be expended in later stages of this action and provide convenience for the parties. The remaining state-law claims deal with intrinsically state-law questions regarding the Governor's inherent executive power under the Alabama Constitution. If such questions proceed before this Court (and possibly the Eleventh Circuit), it is quite likely that one or both parties will request that the key state-law questions be certified to the Alabama Supreme Court. *See Tyne*, 336 F.3d at 1291 ("Substantial doubt about a question of a state law upon which a particular case turns should be resolved by certifying the question to the state supreme court."). Removing the step of certification by a federal court—and instead allowing such questions to proceed directly in state court—conserves judicial and party resources permits a more convenient method for the litigation to proceed. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) ("Both comity and economy are served when issues of state law are resolved by state courts.").

Dismissing any remaining state-law claims does not result in an unfair outcome. "[E]very litigant who brings supplemental claims in court knowingly risks the dismissal of those claims." *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 539 (11th Cir. 2015). Because proceeding in state court, particularly at this early stage in the litigation, works no undue prejudice on the Plaintiff, dismissal of any remaining state-law claims can hardly be claimed as unfair.

**VI. Plaintiff's State-Law Claims Fail as a Matter of Law (Counts IV–VIII).**

To the extent it does not decline to exercise supplemental jurisdiction, and for a variety of reasons, this Court should dismiss Plaintiff's state-law claims with prejudice.

### A. Governors of the State of Alabama Possess the Authority to Terminate the Commissioner (Counts IV, V, and VIII).

As explained above, Governors of the State of Alabama enjoy the constitutional authority to terminate subordinate, non-constitutional executive officials. *Supra* at 47-50. Because Alabama's Constitution cannot be amended by statute, the statutes cited by Plaintiff, such as § 31-5-6, 36-13-7, and 36-25-24(a), Doc. 1 ¶¶ 91-92, cannot circumscribe the authority vested in the Governor by the State Constitution. *See Riley*, 57 So. 3d at 722. Thus, Plaintiff's claims for violation of Alabama Code § 36-25-24, wrongful termination, and intentional interference with business relation fail to state a claim upon which relief can be granted.

### B. Plaintiff's State-Law Claims Are Barred by State Immunity (Counts IV–VIII).

Because Plaintiff's state-law claims seek only money damages, *see* Doc. 1 at 21–25, they are barred by state immunity to the extent they are directed to the Governor her official capacity.[18] "[T]he State is" as a general matter "immune from any lawsuit that would … result in the plaintiff's recovery of money from the State." *Latham*, 927 So. 2d at 821; *see also* ALA. CONST. ART. I, § 14. And "official-capacity claims seeking money damages" like Plaintiff's claims against the Governor, "constitute an impermissible attempt to reach the public coffers." *Ex parte Roberts*, 2025 WL 1776254, at *23 (citation and quotation omitted). Nor does the incantation of "fraud," "bad faith," or other pejoratives permit such an official-capacity claim. *See Ex parte Moulton*, 116 So. 3d at 1141; *Ex parte Cooper*, 390 So. 3d 1030, 1036–37 (Ala. 2023) (The touchstone is … whether the claim is against the State, that is, whether a result favorable to the plaintiff would directly affect a contract or property right of the State. … [A] court has subject-matter jurisdiction to consider that claim only if a favorable result for the plaintiff would not directly affect a contract or property right of the State and would not result in the plaintiff's recovery of money from the

[18] The Complaint does not make clear whether it asserts its state-law claims against the Governor in her official or individual capacity.

State treasury.”). Since Plaintiff seeks only monetary damages for his state-law claims, he may not bring such claims against the Governor in her official capacity.

### C. Plaintiff’s State-Law Claims Are Barred by State-Agent Immunity (Counts IV–VIII).

The Governor also enjoys state-agent immunity in her individual capacity from Plaintiff’s state-law claims. A state officer “*shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s … exercising his or her judgment in the administration of a department or agency of government, including, but not limited to … [h]iring, firing, transferring, assigning, or supervising personnel.” *Ex parte Butts*, 775 So. 2d 173, 177–78 (Ala. 2000) (citing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)) (emphasis in *Cranman*); *see also* ALA. CODE § 36-1-12(c)(2)(d). As explained above, Governors of the State of Alabama enjoy the constitutional authority to terminate subordinate, non-constitutional executive officials. *Supra* at 47-50. As such, the Governor’s termination of Plaintiff does not violate State law, and she is entitled to state-agent immunity as to Plaintiff’s claims for violation of Alabama Code § 36-25-24, wrongful termination, and intentional interference with business relation.

Further, the decision to release information regarding a state official’s performance of his duties—and to publicly express the reasons for the Governor’s decision to terminate that official—necessarily implicates the Governor’s administration of the executive branch and plainly fall within the ambit of state-agent immunity. *See Ex parte McGuire*, No. SC-2024-0419, 2025 WL 1776553, at *6 (Ala. June 27, 2025). A contrary rule would bring an end to public-facing explanations for employment decisions in the executive branch (including the termination of major agency heads), as any such public statements would allow a disgruntled former state official to run to court, make a claim, and seek discovery. *Barr v. Matteo*, 360 U.S. 564, 574–75 (1959) (“We think that under these circumstances a publicly [expressed] statement of the position of the agency head, announcing personnel action which he planned to take in reference to the charges so widely disseminated to the public, was an appropriate exercise of the discretion which an officer of that

rank must possess if the public service is to function effectively."). "It would be an unduly restrictive view of the scope of the duties of a policy-making executive official to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty." *Id.* As such, the Governor is entitled to state-agent immunity for the statements she made surrounding the termination of Plaintiff that underscore his claims for invasion of privacy and defamation.

Plaintiff cannot avoid the application of state-agent immunity by simply reciting the phrases "willful" and "malicious." Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. And a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 563). Although it is true that state-agent immunity does not apply if a state officer "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law," *see Ex parte Butts*, 775 So. 2d at 178, and ALA. CODE § 36-1-12(d)(2), the United States Supreme Court has "squarely rejected" pleadings that allege the "bare elements" of such exceptions to immunity. *See O'Boyle*, 638 F. App'x at 879 (citing *Iqbal*, 556 U.S. at 686–87); *see also Ex parte Gilland*, 274 So. at 985 n.3.

There is no question that state-agent immunity extends to the termination of Plaintiff and the actions surrounding that termination. *See, e.g., Ex parte Wilcox Cnty. Bd. of Educ.*, 279 So. 3d 1135, 1146 (Ala. 2018) ("State-agent immunity extends to decisions and actions involving 'the hiring, firing, transferring, assigning or supervising of personnel.'") (citing *Cranman*, 792 So.2d at 405). In the face of the clear application of state-agent immunity, Plaintiff offers little more than conclusory quotations from the second *Cranman* exception. *See* Doc. 1 ¶¶ 86, 94–95, 102–03, 108–09, 116. Rule 8 requires far more that such bare-bones pleading, and the state-law claims should be dismissed.

### D. The Governor Has No Duty to Pay Plaintiff in Her Individual Capacity (Counts IV and V).

Plaintiff cannot pursue claims for an alleged violation of Alabama Code § 36-25-24 and wrongful termination against the Governor in her individual capacity. The Governor "owed no duties to [Plaintiff] in [her] individual capacit[y] with respect to the conduct alleged by [Plaintiff]." *Ohio Valley Conf. v. Jones*, 385 So. 3d 948, 968–69 (Ala. 2023). Employment-related claims brought against a state officer, like the Governor, in her individual capacity are "nonstarters because the [state officer] obviously owe[s] no duty in [her] individual capacit[y] to pay the employee[]." *Ex parte Pinkard*, 373 So. 3d 192, 201 (Ala. 2022) (citing *Barnhart v. Ingalls*, 275 So. 3d 1112, 1127 n.9 (Ala. 2018)). Because the Governor owed no duties in her individual capacity to pay Plaintiff during his tenure as Commissioner, a claim to receive salary and benefits allegedly owed to Plaintiff, such as the claims for the alleged violation of Alabama Code § 36-25-24 and wrongful termination, cannot be brought against the Governor in her individual capacity.

**E. Alabama Code § 36-25-24 Does Not Supply a Cause of Action for "Public Officials" (Count IV).**

Because Alabama Code § 36-25-24 does not provide a cause of action for Plaintiff, Plaintiff's claim for breach of that statute should be dismissed. Section 36-25-24(a) prohibits a supervisor from taking negative employment action against a "public employee" in retaliation for reporting a violation of the Alabama Code of Ethics. Critically, that quoted term—"public employee"—is defined by the statute. A "public employee" is a person "employed at the state, county, or municipal level of government or their instrumentalities, including governmental corporations and authorities." ALA. CODE § 36-25-1(26). A "public employee" is distinct from a "public official," who is a person "elected to public office, whether or not that person has taken office, by the vote of the people at state, county, or municipal level of government or their instrumentalities, including governmental corporations, *and any person appointed to a position at the state*, county, or municipal *level of government or their instrumentalities*, including governmental corporations." ALA. CODE § 36-25-1(27) (emphasis added).

These statutory definitions clarify the bounds of the cause of action (to the extent one exists) in § 36-25-24. First, although public employees are those employed at the state, county, or

municipal level of government or their instrumentalities, public officials are those elected to public office or "appointed to a position at the state, county, or municipal level of government or their instrumentalities, including governmental corporations." ALA. CODE § 36-25-1(26), (27). Second, § 36-25-24(a) only applies where an adverse employment action is taken against a ***public employee***. Section 36-25-24 draws an explicit distinction between public employees and public officials. *See* ALA. CODE § 36-25-24(c) ("No public employee shall file a complaint or otherwise initiate action against a ***public official or other public employee*** without a good faith basis for believing the complaint to be true and accurate.") (emphasis added). Section 36-25-24(a) is silent as to any adverse action taken against a public official.

Because Plaintiff was a public official rather than a public employee pursuant to the statute, he has no cause of action under Alabama Code § 36-25-24.[19] The Complaint repeatedly underscores Plaintiff's appointment to his former position. *See* Doc. 1 ¶¶ 7, 8, 48, 59. Plaintiff was thus a public official rather than a public employee as those terms are defined in the relevant statute. *See* ALA. CODE § 36-25-1(26), (27). And because § 36-25-24(a) speaks only of adverse employment actions taken against public employees, Plaintiff cannot pursue a claim for an alleged violation of Alabama Code § 36-25-24.

**F. Plaintiff Fails to State a Claim for Wrongful Termination (Count V).**

Plaintiff fails to plead a valid claim for wrongful termination. Under Alabama law, "[t]he dismissal of a public employee who is entitled to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort." *Hardric v. City of Stevenson*, 843 So. 2d 206, 210 (Ala. Civ. App. 2002); *see also Mitchell v. Town of Hayneville, Alabama*, 2020 WL 7480551, at *9 (M.D. Ala. Dec. 18, 2020) (Thompson, J.) ("Alabama courts do allow suits for wrongful termination by

[19] The terms "public official" and "public employee" as used in the Alabama Code of Ethics should not be conflated with the term "public employee" used in the context of First Amendment jurisprudence. The former are statutorily defined and distinct terms. *See* ALA. CODE § 36-25-1(26), (27). The latter is used to describe all of those working for the government in contrast with a "private citizen." *See Garcetti*, 547 U.S. at 421.

public employees fired from tenure-protected positions."). Here, Plaintiff fails to (and cannot) adequately plead such a claim.

First, as explained above, Plaintiff was not a public employee, but, rather, a public official or officer. "A public office is the right, authority, and duty, created by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." *State ex rel. Gray v. King*, 395 So. 2d 6, 7 (Ala. 1981) (internal citation omitted); *see also id.* ("Constitutionally, the term 'public office' implies an authority to exercise some portion of the sovereign power, either by enacting, executing or administering the laws."). The role of the Commissioner includes such functions, including serving as "the executive and administrative officer of the department" and being entitled to "issue administrative orders and directives to all officials and employees in the department." ALA. CODE § 31-5-6 (effective Oct. 1, 2024 to Mar. 17, 2025). Because Plaintiff was not a public employee, he cannot have a claim for wrongful termination.

Finally, even if Plaintiff was a public employee, Plaintiff has not alleged he was not provided a pre-termination hearing. Indeed, Plaintiff alleges that a Board meeting to consider his termination occurred. *See* Doc. 1 ¶¶ 44, 47. Plaintiff once again pleaded himself out of his claim.

### G. The Governor was Not a Stranger to the Business Relation, Defeating the Intentional Interference Claim (Count VIII).

Because the Governor was not a stranger to the business relation underlying Plaintiff's intentional interference with business relation cause of action, Plaintiff lacks a claim. To state a claim for intentional interference with business relation, a plaintiff must establish that a defendant is a "stranger" to the business relation in question. *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003), *as modified on denial of reh'g* (Sept. 5, 2003). "A defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Id.* (internal citations omitted). Indeed, such

"participants," who are "essential" to the underlying relationship, "cannot be guilty of interference" with that relationship. *Id.* at 1157.

Setting aside her supreme executive authority to terminate Plaintiff, the Governor is undoubtedly a "participant" in the "business relation" with the Commissioner. The Alabama Constitution vests in the Governor "[t]he supreme executive power of th[e] state," ALA. CONST., § 113, necessarily overseeing all executive functions, including that of the Board. Moreover, the Governor is (and was) chair of the Board. *See* ALA. CODE § 31-5-3(a) (effective October 1, 2024 to March 17, 2025). And the Commissioner himself is charged with working with other departments and agencies that operate under the ambit of the Governor. *See* ALA. CODE § 31-5-7(b)(2) (effective October 1, 2024 to March 17, 2025). The Governor is no "stranger" to the "business relation" with the Commissioner, and, thus, Plaintiff's claim for intentional interference with business relation fails.

## CONCLUSION

The Court should grant the Governor's Motion, dismiss all federal claims against her with prejudice, and decline to exercise supplemental jurisdiction over the remaining state law claims. Alternatively, should the Court exercise supplemental jurisdiction over the state law claims, it should dismiss those with prejudice, too.

Respectfully submitted,

*/s/ H. William Bloom III*

*/s/ Jordan A. LaPorta*

*Attorneys for Defendant Kay E. Ivey*

OF COUNSEL:

H. William Bloom III
MAYNARD NEXSEN PC
770 Washington Avenue, Ste. 421
Montgomery, AL 36104
(334) 262-2001

wbloom@maynardnexsen.com

Jordan A. LaPorta
MAYNARD NEXSEN PC
1901 Sixth Ave. N., Ste. 1700
Birmingham, AL 35203
(205) 254-1000
jlaporta@maynardnexsen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2025, a copy of the foregoing Motion was served on all counsel of record via CM/ECF.

*/s/ H. William Bloom III*
**OF COUNSEL**